[Decided February 13, 1893.]

## E. F. PARKHURST *v.* CAPITAL CITY RY. CO.

[S. C. 32 Pac. Rep. 304.]

LEGISLATIVE POWER TO GRANT EXCLUSIVE PRIVILEGE.— The legislature has
the power, subject to constitutional limitations, to grant exclusive privi-
leges or franchises, and it may delegate to municipal corporations the
power to grant exclusive franchises in purely municipal matters, but the
power in the municipal corporation to make such a contract must be free
from doubt.

MUNICIPAL CORPORATIONS — GENERAL POWERS.— A general grant of power
to a municipal corporation carries with it all such powers as are clearly
necessary for the convenient and proper exercise of the authority that is
expressly given, but a general grant will not authorize the bestowing of
exclusive privileges.

MUNICIPAL POWERS — MONOPOLY.— It is settled that a municipal corporation cannot create a monopoly by granting exclusive privileges to persons or corporations without express legislative authority so to do, and this power must be plainly conferred in express words, or by implication so direct as to amount to the same thing. *Newport* v. *Light Co.* 84 Ky. 167, and *Des Moines Ry. Co.* v. *City of Des Moines*, 73 Iowa, 513 ( 35 N. W. Rep. 602 ), disapproved.

IDEM.— A general grant to a city "of exclusive power to permit, allow and regulate the laying down of tracks for street cars, upon such terms and conditions as the council may prescribe," does not empower it to grant for a term of years an exclusive franchise to occupy its streets with street railways.

Marion County:   REUBEN P. BOISE, Judge.

Suit in equity by E. F. Parkhurst to enjoin the Capital City Railway Company from building or operating a street railway in or along certain streets in the city of Salem.   The plaintiff claimed that in 1889 the common council of Salem granted to his assignor (The Salem Street Railway Company of Salem, Oregon), the exclusive right to lay down and maintain a street railway track on certain streets in said city for thirty years; that he and his assignor had fully complied with all the terms of said grant, and were fully supplying the requirements of the traveling public; and that there was not, and would not be for many years, sufficient patronage to pay the actual expenses of operating the line already built; that in June, 1892, the common council of said city granted to the Capital City Railway Company permission to build and operate a street railway on the same streets on which plaintiff was already operating his lines, and said company was about to parallel his lines on the same street; that the sole object of the said company was to injure and destroy plaintiff's business.   Plaintiff therefore prayed an injunction prohibiting defendant from building the proposed lines on streets already occupied by plaintiff until the expiration of his exclusive franchise for thirty years.   The court sustained a demurrer and dismissed the suit, from which ruling this appeal is taken.   Affirmed.

*William M. Kaiser ( Tilmon Ford* on the brief), for Appellant.

*Ossian Franklin Paxton ( J. J. Shaw,* and *W. M. Hunt* on the brief), for Respondent.

BEAN, J.— This is a suit to enjoin the defendant corporation from constructing, maintaining or operating an electric street railway under a franchise granted to it by the city of Salem, on certain of its streets, on the ground that the city had previously granted to plaintiff's assignor an exclusive franchise for thirty years for a similar railway on the same streets, which plaintiff and his assignors had constructed and had in operation at the time the franchise was granted to defendant.   The construction and operation of defendant's road, although on the same streets, does not in any way interfere with or prevent the maintenance and operation of the road belonging to plaintiff, except that it may lessen the amount of traffic thereon; and hence the only question presented at the argument, noted in the briefs, or necessary to be considered, is whether the city of Salem had the power to grant to plaintiff's assignor, for a term of years, or at all, the exclusive right to occupy its streets for the purposes of a street railway.   This depends upon the power granted to the city by its charter.   By section 6 of the act incorporating the city of Salem, it is provided that "the mayor and aldermen shall compose the common council of said city, and at any meeting shall have exclusive power" to exercise certain enumerated granted powers, such as "to provide for lighting the streets, and furnishing the inhabitants with gas, or other light, and with pure and wholesome water; to establish hospitals, to license, tax and regulate auctioneers, and to license, tax and regulate hacks, cabs, wagons, carts, and to provide for the establishment of market houses and places"; and "to permit, allow and regulate the laying down of tracks for street cars and other railroads upon such streets as the council

may designate, and upon such terms and conditions as the council may prescribe ": Laws 1889, 528.

The precise question then is, had the city of Salem, under the grant of an exclusive power "to permit, allow, and regulate the laying down of tracks for street cars" upon such terms and conditions as it may prescribe, the power to grant for a term of years the exclusive right to occupy its streets with street railroads?   At the outset it may be conceded that the legislature has, as the general representative of the public, the power, subject to specific constitutional limitations, to grant exclusive privileges or franchises of the character under consideration, and that it may, subject to similar limitations, authorize the exercise of like powers by a municipal corporation as to all matters of a purely municipal nature:   2 Dill. Mun. Corp. § 701; *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650 (6 Sup. Ct. Rep. 252); *New Orleans Water Works Co.* v. *Rivers,* 115 U. S. 674 (6 Sup. Ct. Rep. 273); *Louisville Gas Co.* v. *Citizens Gas Co.* 115 U. S. 683 (6 Sup. Ct. Rep. 265); *Citizens Street Ry. Co.* v. *Jones,* 34 Fed. Rep. 579.   "But," says Mr. Justice BREWER, in *Horse Ry. Co.* v. *Interstate Transit Ry. Co.* 24 Fed. Rep. 307, "as the possession by one individual of a privilege not open to acquisition by others, apparently conflicts with that equality of rights which is the underlying principle of social organization and popular government, he who claims such exclusive privilege must show clear warrant of title, if not probable corresponding benefit to the public."   Hence, the well settled rule of construction, applicable alike to both legislative grants and to those made indirectly through the action of municipal corporations, that exclusive franchises or privileges are not favored, and are always construed most strongly in favor of the state and against the grantee.   If there is any ambiguity or doubt arising out of the language used, as to whether an exclusive franchise has been conferred or authorized to be conferred, it must be resolved against the person or corporation claiming such grant:   1 Dill.

Mun. Corp. § 89.   "Public grants," says BRADLEY, J.,
"are to be so strictly construed as to operate as a sur-
render by them of the sovereignty no further than is
expressly declared by the language employed for the
purpose of their creation.   The grantee takes nothing in
that respect by inference.   Such is deemed the legal
intent of the state in imparting to its citizens or corpora-
tions powers and privileges of a public character": *Syra-
cuse Water Co.* v. *City of Syracuse,* 116 N. Y. 167 (22 N. E.
Rep. 381; 5 L. R. A. 546).

The legislature has, as the general representative of
the public, plenary powers over the streets and highways
within the limits of a municipality, and "has, unless
specially restricted by the constitution," says Mr. Dillon,
"the power to authorize the building of a railroad on a
street or highway without the consent of the municipal
authorities, and may directly exercise this power or de-
volve it upon the local or municipal authorities": 2 Dill.
Mun. Corp. § 701.   But a general grant of power to a
municipal corporation, which is but a mere local agency,
to authorize the use of its streets for such purposes,
while it carries with it, by implication, all such powers
as are clearly necessary for the convenient and proper
exercise of the authority expressly granted, does not
authorize the city to grant an exclusive franchise for that
purpose.   When an exclusive privilege or franchise to
use the streets of the city for the purpose of a street
railway is drawn in question, and is claimed to be derived
through a municipal ordinance or contract, the power of
the municipal authorities to pass the ordinance or enter
into the contract must be free from doubt.   As was said
in *State* v. *Cincinnati Gas Light and Coke Co.* 18 Ohio St.
293, "it must be found on the statute books in express
terms, or arise from the terms of the statute by implica-
tion so direct and necessary as to render it equally
clear."   Nothing short of express legislative authority
will authorize a municipality to grant such a privilege or

enter into such a contract: 15 Am. & Eng. Enc. 1055; 16 Albany Law Jour. 104; 26 Am. L. Rev. 675.

Now, the charter of the city of Salem does not in express terms confer upon the city the power to grant an exclusive franchise for a street railway, nor can such power be implied, because it is not essential to carry into effect the powers expressly given : *Barnett* v. *Dennison,* 145 U. S. 135 (12 Sup. Ct. Rep. 819); *Commonwealth* v. *Erie Ry. Co.* 27 Pa. St. 339 (67 Am. Dec. 471). The only power given is "to permit, allow and regulate," and this must be taken as the measure of its powers in the premises ; and by all the authorities this is not sufficient to authorize the granting of exclusive franchises or privileges. It is true, this power so far granted is by the charter made exclusive ; that is, the city alone has the right and power to permit, allow and regulate the use of its streets for the purpose indicated. To this extent it is endowed with complete legislative sovereignty ; that sovereignty has no limit so long as the city keeps within the powers granted. But the exclusive power "to permit, allow and regulate" the laying down of car tracks is quite a different thing from the power to grant an exclusive permit for that purpose. The one case presupposes a continuing right and power in the city to be exercised whenever in the opinion of the council the public convenience or necessity may require, while the other is a right to delegate to some private individual or corporation a portion of the municipal authority over the streets, and vest the exclusive power in its grantee to permit the use of the streets by another railway. If the city has the power to grant an exclusive privilege for a street railway, it has, under the same section of the charter, like powers in reference to water and gas pipes, electric light and telephone wires and poles, and many other enumerated powers. And, as Mr. Justice COOLEY said, in *Gale* v. *Kalamazoo,* 23 Mich. 344 (9 Am. Rep. 80): "If it might do these things, it is easy to perceive that it might not be long before the incorporation itself, instead

of being a convenience to its citizens, would have been used in various ways to compel them to submit to innumer-able inconveniences, and would itself constitute a public nuisance of the most serious and troublesome description. Individual citizens, looking only to the furtherance of their private interests, might, in various directions, engage it in permanent contracts, which, while ostensibly for the public benefit, should impose obligations precluding further improvements, and depriving the town prospectively of those advantages and conveniences which the municipality was created to supply, and without which it is worthless."

The charter of the city of Salem only confers upon the municipality the general power to permit or allow the use of its streets for street railway purposes, and, under such a power, the adjudged cases are practically unanimous that the city cannot grant exclusive privileges. Thus, when a city, having a general power to permit a street railway company to lay its track in the streets, granted an exclusive right for a certain number of years, the exclusive part of the grant was held void. BREWER, J., delivering the opinion of the court, in speaking of the effect of such power in a municipality, says: "That it furnishes no authority for surrendering its constant supervision and management to any other corporation or individual. It implies that the city today, tomorrow, and so long as the grant remains, shall exercise its constant judgment as to the needs of the public in the streets, and not that it may today surrender the right of determining a score of years hence what the public may then need. The city may today determine that one street railroad will answer all the wants of the public, and so give the privilege of occupying the streets to but a single company. Ten years hence its judgment may be that two railroads are needed. Where is the language in the charter which restricts it from carrying such judgment into effect by giving a like privilege to a second company? * * * When the legislature deems that public interests

require that cities should be invested with power to grant exclusive privileges, it will say so in unmistakable terms, as it already has in some instances. Till then the courts must deny the possession of such powers." So also in *Davis* v. *The Mayor*, 14 N. Y. 506 (67 Am. Dec. 186), under a like power the city undertook by resolution to confer upon an association of persons the exclusive right to construct and maintain for a term of years a railway in Broadway for the transportation of passengers for profit. The court of appeals held the resolution void, and that the city had no power to make such a grant. Mr. Dillon, in commenting on this case, says that it "rests upon the sound principle that the powers of a corporation in respect to the control of its streets are held in trust for the public benefit, and cannot, unless clearly authorized by a valid legislative enactment, be surrendered to private parties, either corporate or natural. In this case there was no such authority, and hence the resolution of the council of Salem authorizing private persons to construct and operate a railroad upon certain terms, without power of revocation and without limit as to time, was not a license or act of legislation, but a contract; void, however, because if valid it would deprive the corporation of the control and regulation of its streets": 2 Dill. Mun. Corp. § 716. See also to the same effect *Milhau* v. *Sharp*, 27 N. Y. 611 (84 Am. Dec. 314); *Ry. Co.* v. *Ry. Co.* 79 Ala. 465 (58 Am. Rep. 615); *New Orleans R. R. Co.* v. *Crescent City Ry. Co.* 12 Fed. Rep. 308; *People's R. R. Co.* v. *Memphis R. R. Co.* 10 Wall. 52; *Cincinnati R. R. Co.* v. *Smith*, 29 Ohio St. 291; Cooley, Const. Lim. 207, 208; 2 Dill. Mun. Corp. (4 ed.) 727, and cases cited; and the recent case of *New Orleans S. R. Co.* v. *City of New Orleans*, (44 La. Ann. —) 11 So. Rep. 78.

In harmony with these authorities, and resting upon the same general principles which they announce, are the cases denying to municipalities, under the grant of power to establish and regulate ferries within their limits, the power to confer exclusive privileges or fran-

chises for that purpose: *East Hartford* v. *Bridge Co.* 10 How. 511; *Minturn* v. *Larue*, 23 How. 435; *Wright* v. *Nagle*, 101 U. S. 796; 1 Dill. Mun. Corp. (4 ed.) § 114, and cases cited. So, although supplying water and light for city purposes is now recognized to be one of the most important functions of municipal government, in which private persons or corporations would not be likely to engage without some assurance of a return upon their outlay, (hence, the apparent reason for permitting a city to grant exclusive privileges for such purposes); yet by the decided weight of authority, a municipality cannot under a general power on the subject, such as the city of Salem possesses over street railways, grant to a corporation or individual the exclusive right to use its streets for such purpose: *State* v. *Cin. Gas Co.* 18 Ohio St. 262; *Grand Rapids E. L. & P. Co.* v. *G. R. E. E. L. & F. Co.* 33 Fed. Rep. 659; *Saginaw Gas Light Co.* v. *Saginaw*, 28 Fed. Rep. 536; *Syracuse Water Co.* v. *Syracuse*, 116 N. Y. 167 (22 N. E. Rep. 381; 5 L. R. A. 546); *Hamilton Gas Light Co.* v. *City of Hamilton*, 37 Fed. Rep. 832; *East St. Louis* v. *Gas Light Co.* 10 Reporter, 109; *City of Brenham* v. *Brenham Water Co.* 67 Tex. 542 (4 S. W. Rep. 143); *Norwich Gas Light Co.* v. *Norwich City Gas Co.* 25 Conn. 19; *Lehigh Water Co.'s Appeal*, 102 Pa. St. 525; *Davenport* v. *Kleinschmidt*, 6 Mont. 502 (13 Pac. Rep. 249); *Long* v. *City of Duluth, Minn.* 51 N. W. Rep. 913; 2 Dill. Mun. Corp. (4 ed.), § 692 *et seq.* and cases cited.

We take it, therefore, to be settled by the decided weight of authority, that a municipal corporation cannot create a monopoly by granting the exclusive privilege to any person or corporation to use its streets for laying street railway tracks, without express legislative authority so to do, and this power must be plainly conferred in express words, or arise from the language used by implication so direct as to amount to the same thing. The mere general power to permit or allow the use of the streets for such purposes, is not sufficient to authorize the granting of exclusive privileges. The only cases to

which we have been cited, or have been able to find, apparently holding a contrary doctrine, are *City of Newport* v. *Light Co.* 84 Ky. 167, and *Des Moines Ry. Co.* v. *City of Des Moines*, 73 Iowa, 513 ( 33 N. W. Rep. 610; 35 N. W. Rep. 602), both of which have been criticised and declared to be contrary to the decided weight of authority by BROWN, J., in *Gas Light Co.* v. *Saginaw*, 28 Fed. Rep. 536, and JACKSON, J., in *Grand Rapids L. & P. Co.* v. *Grand Rapids, etc.*, 33 Fed. Rep. 659, and are considered by Mr. McKinley, author of the article on "Municipal Corporations" in the Am. & Eng. Enc., to be out of line with the authorities on the subject.   As the charter of the city of Salem does not, in express words, or by necessary implication equivalent thereto, confer upon the city the power to grant the exclusive privilege to one person or corporation to occupy its streets with a street railway, but only contains a general grant of a continuing power "to permit, allow, and regulate the laying down of tracks thereon," it seems clear that it did not authorize the city to grant an exclusive franchise to plaintiff's assignor. and thereby disable itself from granting a similar privilege to defendant over the same streets.

It is earnestly urged that the construction of street railways necessarily requires the expenditure of a large sum of money, usually without the prospect of an immediate return, and hence private persons would not be likely to engage in such enterprises without an assurance that they would be protected from competition for a sufficient length of time to remunerate them for the outlay. This argument, which is not without force, suggests considerations of policy which might influence the legislature to grant, or authorize the granting of, exclusive franchises, or induce a municipality to make a franchise practically exclusive by withholding a like privilege from a competing enterprise, but a reference to the cases cited will show that it has often been urged, but without effect, when a court is called upon to construe particular legislation.

It follows that the decree of the court below must be affirmed and the complaint dismissed.

[Argued Jan. 23, 1893; decided Feb. 13, 1893; rehearing denied Mar. 13, 1893.]