## DETROIT CITIZENS' STREET RAILWAY COMPANY v. DETROIT RAILWAY.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 236. Argued April 26, 27, 1898. — Decided May 23, 1898.

At the time when the plaintiff in error received from the city of Detroit exclusive authority to construct and operate its railways in that city, the common council of Detroit had no power, either inherent or derived from the legislature, to confer an exclusive privilege thereto.

THE plaintiff in error is a street railway company of the State of Michigan, organized for the purpose of owning and operating lines in the city of Detroit, and is the successor in interest of a similar corporation named the Detroit City Railway. The rights asserted by it arise from an ordinance of the common council of that city passed upon November 24, 1862. This provided that the Detroit City Railway was "exclusively authorized to construct and operate railways as herein provided, on and through" (certain specified streets) "and through such other streets and avenues in said city as may from time to time be fixed and determined by vote of the common council of the said city of Detroit and assented to in writing by said corporation. . . . And provided the corporation does not assent in writing, within thirty days after the passage of said resolution of the council ordering the formation of new routes, then the common council may give the privilege to any other company to build such route."

The ordinance provided also that "the powers and privileges conferred by the provisions of this ordinance shall be limited to thirty years from and after the date of its passage."

Section 2 of the ordinance is only necessary to be quoted, and it is inserted in the margin.[1]

---

[1] SEC. 2. The said grantees are, by the provisions of this ordinance, exclusively authorized to construct and operate railways as herein provided, on and through Jefferson, Michigan and Woodward avenues, Witherell, Gratiot, Grand River and Brush or Beaubien streets; and from Jefferson

There is also inserted in the margin sections 33 and 34 of the Tram Railway Act.[1] Howell's Stats. 1882, c. 94, Title 16.

By an ordinance passed November 14, 1879, it was provided further that "the powers and privileges conferred and obligations imposed on the Detroit City Railway Company by the ordinance passed November 24, 1862, and the amend-

---

avenue through Brush or Beaubien streets to Atwater street; and from Jefferson avenue, at its intersection with Woodbridge street, to Third street; up Third street to Fort street and through Fort street to the western limits of the city; and through such other streets and avenues in said city as may from time to time be fixed and determined by vote of the common council of the said city of Detroit, and assented to, in writing, by said corporation, organized as provided in section first of this ordinance. And provided, The corporation does not assent, in writing, within thirty days after the passage of said resolution of the council ordering the formation of new routes, then the common council may give the privilege to any other company to build such route, and such other company shall have the right to cross any track of rails already laid, at their own cost and expense; Provided, always, that the railways on Grand River street, Gratiot street and Michigan avenue shall each run into and connect with the Woodward avenue railways, in such direction that said railways shall be continued down to, and form, each of them, one continuous route to Jefferson avenue; Provided, always, that said railroad down Gratiot street may be continued to Woodward avenue, through State street, or through Randolph street, and Monroe avenue and the Campus Martius, as the grantees, or their assigns, under this ordinance may elect.

[1] SEC. 33. It shall be competent for parties to organize companies under this act to construct and operate railways in and through the streets of any town or city in this State.

SEC. 34. All companies or corporations formed for such purposes shall have the exclusive right to use and operate any street railways constructed, owned or held by them; Provided, that no such company or corporation shall be authorized to construct a railway under this act through the streets of any town or city without the consent of the municipal authorities of such town or city and under such regulations and upon such terms and conditions as said authorities may from time to time prescribe; Provided, further, that, after such consent shall have been given and accepted by the company or corporation to which the same is granted, such authorities shall make no regulations or conditions whereby the rights or franchises so granted shall be destroyed or unreasonably impaired, or such company or corporation be deprived of the right of constructing, maintaining and operating such railway in the street in such consent, or grant named, pursuant to the terms thereof.

ments thereto, are hereby extended and limited to thirty years from this date."

On November 20, 1894, the common council passed an ordinance granting to several third parties the right to construct street railways upon portions of certain streets upon which the plaintiff in error was maintaining and operating street railways, and also the right to construct, maintain and operate railways on certain other streets, alleys and public places in the city of Detroit, without giving to plaintiff in error the opportunity to decide whether it would construct the same. The present suit was brought in the circuit court for the county of Wayne and State of Michigan, to enjoin the grantees named in the latter ordinance, and also the city, from acting thereunder, upon the ground that it impaired the contract between the city and the plaintiff in error arising from the ordinances first aforesaid. The bill was dismissed, and, on appeal to the Supreme Court of the State, the decree of dismissal was affirmed. From that decree the present writ of error has been duly prosecuted to this court.

There are five assignments of error. They present the contention that the grant to the plaintiff in error was a contract within the protection of the provision of the Constitution of the United States, which prohibits any State from passing any law impairing the obligation of a contract, and that the subsequent grant to the defendant in error, the Detroit Railway, was a violation and an impairment of the obligation of that contract.

*Mr. John C. Donnelly*, *Mr. H. M. Duffield* and *Mr. Frederic A. Baker* for plaintiff in error. *Mr. Michael Brennan*, *Mr. David Willcox* and *Mr. Frank Sullivan Smith* were on the plaintiff in error's briefs.

*Mr. John B. Corlies*, *Mr. Charles Flowers* and *Mr. Joseph H. Choate* for defendants in error. *Mr. Philip A. Rollins* was on their brief.

Mr. Justice McKenna, after stating the case, delivered the opinion of the court.

The controversy turns primarily upon the power of the city of Detroit over its streets, whether original under the constitution of the State, and hence as extensive as it would be in the legislature, or whether not original but conferred by the legislature, and hence limited by the terms of the delegation.

The first proposition is asserted by the plaintiff in error; the second proposition by the defendants in error.

The provisions of the constitution which are pertinent to the case are as follows:

" The State shall not be a party to or interested in any work of internal improvement, nor engaged in carrying on any such work, except in the expenditure of grants to the State of land or other property.

" There shall be elected annually on the first Monday of April in each organized township . . . one commissioner of highways . . . and one overseer of highways for each highway district.

" The legislature shall not . . . vacate or alter any road laid out by the commissioners of highways, or any street in any city or village, or in any recorded town plat.

" The legislature may confer upon organized townships, incorporated cities and villages, and upon boards of supervisors of the several counties such powers of a local, legislative and administrative character as they may deem proper."

The Supreme Court of Michigan, in its opinion, 68 N. W. Rep. 304, interprets these provisions adversely to the contention of plaintiff in error, and, reviewing prior cases, declares their harmony with the views expressed. " The scope of the earlier decisions," the court said, " is clearly stated by Mr. Justice Cooley in *Park Commissioners* v. *Common Council,* 28 Michigan, 239. After stating that the opinion in *People* v. *Hurlbut* had been misapprehended, Justice Cooley said: ' We intended in that case to concede most fully that the State must determine for each of its municipal corporations the powers it should exercise, and the capacities it should possess, and that it must also decide what restrictions should be placed upon these, as well to prevent clashing of action and interest in the State as to protect individual corporators

against injustice and oppression at the hands of the local majority. And what we said in that case we here repeat — that, while it is a fundamental principle in this State, recognized and perpetuated by expressed provisions of the constitution, that the people of every hamlet, town and city of the State are entitled to the benefits of local self-government, the constitution has not pointed out the precise extent of local powers and capacities, but has left them to be determined in each case by the legislative authority of the State from considerations of general policy, as well as those which pertain to the local benefit and local desires. And in conferring those powers it is not to be disputed that the legislature may give extensive capacity to acquire and hold property for local purposes or it may confine authority within the narrow bounds; and what it thus confers it may enlarge, restrict or take away at pleasure.' "

This decision of the Supreme Court of Michigan is persuasive if not authoritative; but, exercising an independent judgment, we think it is a correct interpretation of the constitutional provisions. The common council of Detroit, therefore, had no inherent power to confer the exclusive privilege claimed by the plaintiff in error.

Did it get such power from the legislature? It is contended that it did by the act under which the Detroit City Railway Company, the predecessor of plaintiff in error, was organized, and to whose rights and franchises it succeeded. This act is the Tram Railway Act, and at the time of the adoption of the first ordinance in 1862, section 34 of that act provided that "all companies or corporations formed for such purposes [the railway purposes mentioned in the act] shall have the exclusive right to use and operate any railways constructed, owned or held by them: Provided, that no such company or corporation shall be authorized to construct a railway, under this act, through the streets of any town or city, without the consent of the municipal authorities of such town or city, and under such regulations and upon such terms and conditions as said authorities may from time to time prescribe."

In 1867 the further proviso was added that, after such consent should be given and accepted, such authorities should make no regulations or conditions whereby the rights or franchises so granted should be destroyed or unreasonably impaired, or such company be deprived of the right of constructing, maintaining and operating such railway.

It is clear that the statute did not explicitly and directly confer the power on the municipality to grant an exclusive privilege to occupy its streets for railway purposes. It is urged, however, that such power is to be inferred from the provision which requires the consent of the municipal authorities to the construction of a railway under such terms as they may prescribe, combined with the provisions of the constitution, which, if they do not confer a power independent of the legislature, strongly provide for and intend local government. The argument is strong, and all of its strength has been presented and is appreciated, but there exist considerations of countervailing and superior strength. That such power must be given in language explicit and express, or necessarily to be implied from other powers, is now firmly fixed. There were many reasons which urged to this — reasons which flow from the nature of the municipal trust — even from the nature of the legislative trust, and those which, without the clearest intention explicitly declared — insistently forbid that the future should be committed and bound by the conditions of the present time, and functions delegated for public purposes be paralyzed in their exercise by the existence of exclusive privileges. The rule and the reason for it are expressed in *Minturn* v. *Larue*, 23 How. 435; *Wright* v. *Nagle*, 101 U. S. 791; *State* v. *Cincinnati Gas Light and Coke Co.*, 18 Ohio St. 262; *Parkhurst* v. *Salem*, 32 Pac. Rep. 304; *Saginaw Gas Light Co.* v. *Saginaw*, 28 Fed. Rep. 529, decided by Mr. Justice Brown of this court; *Long* v. *Duluth*, 51 N. W. Rep. 913. See also *Grand Rapids Electric Light and Power Co.* v. *Grand Rapids &c. Co.*, 33 Fed. Rep. 659, opinion delivered by Mr. Justice Jackson at circuit. As bearing on the rule, see also *Oregon Railway & Navigation Co.* v. *Oregonian Railway Co.*, 130 U. S.

1; *Central Transportation Co.* v. *Pullman Palace Car Co.,* 139 U..S. 24.

The power, therefore, must be granted in express words or necessarily to be implied. What does the latter mean? Mr. Justice Jackson, in *Grand Rapid &c. Power Co.* v. *Grand Rapid &c. Co., supra,* says: . . . "that municipal corporations possess and can exercise only such powers as are 'granted in *express words,* or those *necessarily* or *fairly* implied, *in or incident to the powers expressly conferred, or those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.'* " The italics are his. This would make "necessarily implied" mean inevitably implied. The Court of Appeals of the Sixth Circuit, by Circuit Judge Lurton, adopts Lord Hardwicke's explanation, quoted by Lord Eldon in *Wilkinson* v. *Adam,* 1 Ves. & B. 422, 466, that "a necessary implication means not natural necessity, but so strong a probability of intention, that an intention contrary to that, which is imputed to the testator, cannot be supposed." If this be more than expressing by circumlocution an inevitable necessity, we need not stop to remark; or if it mean less, to sanction it, because we think that the statute of Michigan, tested by it, does not confer on the common council of Detroit the power it attempted to exercise in the ordinance of 1862. To refer the right to occupy the streets of any town or city to the consent of its local government was natural enough — would have been natural under any constitution not prohibiting it, and the power to prescribe the terms and regulations of the occupation derive very little if any breadth from the expression of it. But assuming the power to prescribe terms does acquire breadth from such expression, surely there is sufficient range for its exercise which stops short, or which rather does not extend to granting an exclusive privilege of occupation. Surely there is not so strong a probability of an intention of granting so extreme a power that one, contrary to it cannot be supposed, which is Lord Hardwicke's test, or that it is indispensable to the purpose for which the power is given or necessarily to be implied from it which is the test of the cases. The rule is one

of construction.   Any grant of power in general terms read literally can be construed to be unlimited, but it may, notwithstanding, receive limitation from its purpose — from the gen eral purview of the act which confers it.   A municipality is a governmental agency — its functions are for the public good, and the powers given to it and to be exercised by it must be construed with reference to that good and to the distinctions which are recognized as important in the administration of public affairs.

Easements in the public streets for a limited time are different and have different consequences from those given in perpetuity.   Those reserved from monopoly are different and have different consequences from those fixed in monopoly. Consequently those given in perpetuity and in monopoly must have for their authority explicit permission, or, if inferred from other powers, it is not enough that the authority is convenient to them, but it must be indispensable to them.

*Decree affirmed.*

Mr. Justice Shiras did not hear the argument and took no part in the decision.