ATTORNEY GENERAL, *ex rel.* SHEEHAN, *v.* BOARD OF EDUCATION OF CITY OF DETROIT.

SCHOOLS AND SCHOOL DISTRICTS—BOARD OF EDUCATION—POWERS—PURCHASE AND SALE OF SCHOOL BOOKS.

> Under the local act creating the board of education of the city of Detroit, granting power to make by-laws and ordinances relative to regulation of the schools and books to be used therein and relative to anything whatever that may advance the interests of education, the good government and prosperity of the free schools in said city and the welfare of the public concerning the same (Laws 1869, Act No. 233), and conferring power to sell and convey real and personal property, the board of education is not empowered to buy school books for the students of the Detroit high schools and sell them at cost.

Appeal from Wayne; Hosmer and Murfin, JJ. Submitted April 8, 1913. (Docket No. 6.) Decided May 28, 1913.

Bill by the attorney general on the relation of John V. Sheehan and James F. Macauley against the Board of Education of the city of Detroit and others for an injunction restraining defendants from buying and selling high school text books. From a decree for complainants, defendants appeal. Affirmed.

*Edmund Atkinson,* for appellants.

*Bowen, Douglas, Eaman & Barbour,* for appellees.

OSTRANDER, J. A resolution of the board of education of the city of Detroit instructed the secretary of the board—

"To purchase a supply of such high school textbooks, as are not furnished free on the usual terms on which the board purchases text-books, sufficient to

supply the needs of high school pupils during the first semester, and to arrange for the sale of the books at cost to high school pupils; the secretary to act in conjunction with the superintendent and the committee on text-books and course of study and finance."

Bids for books to be furnished under this resolution were solicited. Asserting that the board of education has no power to engage in the purchase and sale of text-books, the attorney general, upon the relation of two taxpayers of the city, who are also dealers in books, filed in the circuit court, in chancery, a bill to restrain contemplated further proceedings in accordance with the resolution. An issue was made by answer and replication; there was a hearing at which testimony was taken in open court; the court granted the permanent injunction prayed for in the bill; and the defendants have appealed from the decree. The question presented is whether the board of education has power to do what the resolution contemplates shall be done.

It is conceded that the defendant board has no express power to carry out its resolution unless it is conferred in the following language of the act creating the school district:

"The board of education shall have full power and authority   *   *   *   to make by-laws and ordinances   *   *   *   relative to regulation of schools, and the books to be used therein;   *   *   *   relative to anything whatever that may advance the interests of education, the good government and prosperity of the free schools in said city, and the welfare of the public concerning the same." Act No. 233, Laws 1869, § 8.

Relying upon this, defendants also point out that section 5 of the act gives to the board of education power to sell and convey real and personal property as the interest of said free schools may require. It is said, too, that, in the absence of express power in this behalf, power to do what the board desires to do may fairly be implied, and that the exercise of the

power is demanded by the circumstances disclosed. The circumstances related and claimed to be established by proofs are that there are 5,500 pupils in high schools in Detroit; the number increasing at the rate of 500 annually. Dealers in school books are fewer in number than formerly; there being now two dealers where in former years there were five. The large majority of pupils reside at considerable distances from the bookstores of the city at which text-books have been heretofore obtained. The journey from six of the seven high schools to the bookstores and back to the school is five miles long. The books required are not always obtainable when wanted, the local dealers ordering an inadequate supply, and the time and money spent in securing the books is considerable. The prices charged by local dealers are excessive, and the board of education can buy and sell the necessary books so as to effect a considerable saving of money. These and other circumstances and conditions are presented to support the proposition that the proposed action of the board of education is in the interest of education, the prosperity of the schools, and the welfare of the public concerning the same.

Broad as the terms employed in the act are, we cannot admit that what is proposed to be done is "anything whatever that may advance the interests of education, the good government and prosperity of the free schools in said city, and the welfare of the public concerning the same," within the meaning and purpose of the statute. It is familiar doctrine that school districts are State agencies with limited powers, confined, generally, to those expressly enumerated and those necessarily implied. And, although in general terms powers may be broadly given, the character of the corporation itself and the purposes for which it was created supply limitations in view of which the language employed must be read. Powers could not

be conferred in broader terms than are found in the section of the act which has been referred to. And yet it is apparent that the power to make by-laws and ordinances "relative to anything whatever that may advance the interests of education, the good government and prosperity of the free schools in said city, and the welfare of the public concerning the same," is variously limited. When read with the specific enumeration of powers otherwise conferred in the act, the very universality of the grant is itself a limitation of the grant. It may be admitted that this general grant of power takes on a meaning today, and has an effect, which could not have been contemplated by the legislature which enacted the law. Boards of education, supported by public sentiment and interest, now commit school districts to various measures and activities which our fathers would have regarded as revolutionary and intolerable. Measures which were once discarded, if they were ever considered in educational affairs, are demonstrably efficient in advancing the interests of education generally. Manual training schools and domestic science schools are examples of comparatively new approved departures in methods of public school training. Lumber and flour, glue and condiments, are materials which must now be purchased by the school board along with chalk and globes and maps. Having power to prescribe the courses of study, the board has authority, undoubtedly, to provide the means necessary for pursuing the courses. *Knabe* v. *Board of Education,* 67 Mich. 262 (34 N. W. 568). We are impressed, however, that the grant we are considering was not intended to empower the board of education of the city of Detroit to do *everything whatever* that may advance the interests of education in the city of Detroit, but only such things as it may do without changing its character as a board of education, without, for example, assuming or taking on the character of a commercial or trading cor-

poration.   Otherwise the activities of the board may occupy the almost limitless field of ascertaining and correcting influences and conditions which retard the interests of education.   The reasons which are urged in support of the exercise of greater powers than are herein indicated should be urged upon the legislature.

The decree of the court below is affirmed.   No costs of this appeal are awarded to either party.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred.   KUHN, J., did not sit.