No. 9604.

HALLETT, ET AL. *v.* THE POST PRINTING AND PUBLISHING COMPANY.

1. SCHOOLS—*Powers of Board of Directors.* May exclude pupils who do not meet reasonable health requirements; may take expert advice as to what these requirements should be; may employ suitable persons to make inspections and give advice as to physical condition and training.

But physical examinations should not include medical or surgical treatment.

2. *Statutes—Construed.* Section 5925, R. S. 1908, providing for the employment of "teachers, mechanics and laborers" does not restrict a school board to the employment of such persons only.

3. *Statutes—Construed.* Chapter 203, S. L. 1909, providing for the yearly inspection of pupils by inexpert principals and teachers, does not forbid adequate inspection by experts and was not intended as a complete system to supersede the board's power to protect and physically educate children.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. WILLIAM H. GABBERT, Mr. F. W. SANBORN, Mr. HERBERT M. MUNROE, for plaintiffs in error.

Mr. JOHN A. RUSH, Mr. FOSTER CLINE, for defendant in error.

*En banc.*

Mr. Justice Denison delivered the opinion of the court.

THE court below granted an injunction against plaintiffs in error, who are the president, secretary and treasurer of the School Board of Denver, forbidding them to issue warrants for the maintenance of the "School Health Inspection Department", which the board had established and in which it was employing doctors, dentists and nurses, on the ground that such maintenance was beyond its lawful powers.

The power of the school board to exclude pupils who do not meet reasonable health requirements, which is undoubted, necessitates the conclusion that they have power:

1.   To make the requirements, and therefore to take expert advice as to what those requirements ought to be.

2.   To determine whether the pupil meets them, which requires expert advice and inspection, and therefore they may employ suitable persons to give such advice and make such inspection.

The fact that in small districts this may be impossible is immaterial.

It is also undoubted that the board may provide for the physical as well as the mental education of the pupils. It follows that, if they provide physical education, they must, within reasonable limits as to expense and time of pupils, provide for determining what is proper and beneficial for each pupil, by all reasonable means, including examination, physical as well as mental, by suitable persons, and for proper physical exercises and development to overcome defects.

This should not include medical or surgical treatment for disease. That would be to make infirmaries or hospitals of the schools.

The fact that the persons employed are professional medical men and nurses does not preclude but justifies their employment for such a purpose.

If the board were restricted by R. S. § 5925 to the em-

ployment of "teachers, mechanics and laborers" only, as is claimed by the defendant in error, it could not employ a lawyer, architect, clerk, secretary, bookkeeper, librarian, engineer (civil or stationary) or even a superintendent; and, further, if employes are inspecting the children and directing what is to be done for their physical education, they are as certainly teachers as are those principals of large schools who do not actually teach.

As to S. L. 1909, Ch. 203, it is claimed that since that act provides a complete system of health inspection for schools, school boards cannot lawfully do more. An examination of the act, however, discloses no purpose on the part of the legislature to provide a complete system of inspection or to restrict school boards in any way.

The act provides for a yearly inspection by inexpert principals and teachers, of sight, hearing and breathing only, and that without drugs or instruments, at an annual expense of $1,000 for the whole state.

We are asked to hold that the provision for such inspection forbids adequate inspection by experts.

We ought not to impute absurdity unnecessarily. It was not absurd to require such inspection as a minimum, nor, perhaps, to forbid the inexpert to use instruments, however inefficient their inspection might be without them; but if the legislature should go to the length of establishing such inspection as the maximum of what might lawfully be done for the health of the public school children, would it not be absurd?

Section 2 requires no inspection at all; not for infectious disease, physical education, hygiene, personal sanitation, nor for any police purpose. It merely requires principals and teachers to report what is apparent.

It is not possible that this act was intended as a complete system to supersede the board's power to protect and physically educate the children.

The provision of the constitution for free schools for all from six to twenty-one years of age did not preclude free

schools for those under six. In *Re Kindergarten Schools,* 18 Colo. 234, 236, 32 Pac. 422, 19 L. R. A. 469.

Why, then, does a provision for inspection of sight, hearing and breathing preclude inspection for measles or curvature of the spine?

The fears that school districts will be loaded with unnecessary and expensive experts are groundless. The same. argument would apply to teachers, mechanics, laborers and principals. The people of the district can always control the whole matter by changing the board.

The judgment should be reversed.