## GOODMAN v. SCHOOL DIST. NO. 1, CITY AND COUNTY OF DENVER, et al.

Circuit Court of Appeals, Eighth Circuit.
April 17, 1929.

No. 8204.

Victor Arthur Miller and Mandell Levy, both of Denver, Colo., for appellant.

Cass E. Herrington, Herbert M. Munroe, and Cass M. Herrington, all of Denver, Colo., for appellees.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

VAN VALKENBURGH, Circuit Judge. School district No. 1, in the city and county of Denver, state of Colorado, has inaugurated and conducts in certain of the school buildings of said school district cafeterias wherein luncheons are provided for the pupils and teachers of said schools at noontime of each school day. Employees of the schools also are served, and parents and other occasional visitors are permitted to patronize these cafeterias. Concerning the service to pupils, the testimony is to this effect:

"It is not compulsory, but a large proportion are served in proportion varying in the different schools. Some bring their lunches to school and facilities are afforded them for eating those lunches with others in the lunch room. Some bring part of their lunch and buy the rest, particularly in the districts where the poorer classes of children attend."

Classes are in session constantly throughout the school day—approximately from 9 in the forenoon until 3 in the afternoon. There is a luncheon intermission of thirty minutes at noon for the individual pupils. The districts served by these schools are large, having diameters of from two to four miles. Except in individual cases, where they go to their homes for luncheon, pupils are not permitted to leave the school buildings during the noon intermission. This rule is established for the maintenance of school discipline, necessary supervision by teachers, for promotion of the best social and democratic spirit among the pupils, and in the interest of their health and welfare.

The food at the cafeterias is sold at moderate prices, sufficient, however, to discharge operating expenses and to provide for replacement of worn-out equipment. Profit over and above these requirements is negligible, and is not sought. No return is made in the way of interest upon the capital originally invested in the establishment of the cafeterias, nor by way of rental for the space

occupied by them in the school buildings. All of the lunchrooms are used in some degree for instruction purposes when not in use for lunches.

Appellant, a citizen of California, brings her bill against the school district and members of its school board, charging that they have inaugurated a restaurant business for the purpose of buying, cooking, and vending foodstuffs, etc., for money considerations, to the pupils and teachers of the schools within the aforesaid district at noontime of each school day; that large sums of money were expended for the purchase and installation of kitchens, apparatus, and other property; that this business has been and is being conducted in buildings owned for public school purposes, and that foodstuffs have been sold to parties other than students and teachers; that expenditures have been made in various ways out of moneys derived partly from proceeds of bond issues, partly from direct taxation and partly, as to operating expenses only, from the current proceeds of operation; that all this augments school taxation and amounts to a misuse of public property. It is charged that such conduct deprives the appellant of her property as a taxpayer without due process of law and in violation of the Fourteenth Amendment to the Constitution of the United States; further, that the institution and operation of the alleged business is beyond the scope and power of the school district as defined by the Constitution and laws of the state of Colorado. The jurisdiction of the federal court is based upon diversity of citizenship and the question raised under the Federal Constitution. The prayer was for an injunction to restrain the school district and the members of the school board from continuing the operations complained of. Upon hearing, the finding was for appellees, defendants below, and the bill was dismissed at appellant's costs.

The two grounds for the relief sought are: (1) Unconstitutionality—appellant urges that the operation of these cafeterias is a private enterprise and invokes the principle that taxation used to subserve a private mercantile purpose is violative of the true principle of democratic government, and in this case deprives appellant, and those similarly situated, of their property without due process of law, and denies to them the equal protection of the laws guaranteed by the Fourteenth Amendment. (2) Ultra vires, to wit, lack of legal power of the school board to conduct such cafeterias under the Constitution and laws of the state of Colorado.

1. That the business does not subserve a private mercantile purpose, but is conducted for the public welfare, that is, for the benefit of the student body, is apparent from the record before us. Parents visiting the schools, for purposes of inspection, are served, if present at the noon hour; likewise employees, in the interest of economy. Occasionally a citizen of the neighborhood has not been denied admission to the lunchroom; but this practice is carefully guarded and its abuse prevented. Altogether outside patronage is so negligible that it may be disregarded. In no event can this operation of the cafeterias be viewed as a mercantile enterprise for private gain.

In Laughlin v. City of Portland, 111 Me. 486, 90 A. 318, 51 L. R. A. (N. S.) 1143, Ann. Cas. 1916C, 734, the challenge was to the establishment and maintenance of a public yard for the sale of wood, coal, and other fuel, without financial profit, to the inhabitants of a municipality. The Supreme Court of the state of Maine, in the course of its analysis, while upholding the principle that municipalities should neither invade private liberty nor encroach upon the field of private enterprise, found that, in the case before it, the element of commercial enterprise was entirely lacking; that the purpose was neither to embark in business for the sake of direct profits nor for the sake of indirect gains to purchasers through reduction of price by governmental competition. In a case involving the same subject-matter, the Supreme Court of the United States quoted approvingly from Laughlin v. City of Portland, and held that the act establishing such a public yard for the sale of fuel was "a public purpose for which taxes may be levied without violating the Fourteenth Amendment." Jones et al. v. City of Portland, 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660. See also, Green et al. v. Frazier et al., 253 U. S. 233, 40 S. Ct. 499, 64 L. Ed. 878. State legislation permitting a city owning an electric plant to sell electricity to private consumers, while subjecting a competing private corporation to regulation of its rates, does not deny to that private corporation the equal protection of the laws. Springfield Gas & Electric Co. v. City of Springfield, 257 U. S. 66, 42 S. Ct. 24, 66 L. Ed. 131.

"The fact that a city engaging in a commercial line of activity competes with and damages one of its inhabitants in his trade or business does not entitle him to relief against municipal action for the city owes him no immunity from competition." Andrews v. City of South Haven, 187 Mich. 294, 153 N. W.

827, L. R. A. 1916A, 908, Ann. Cas. 1918B, 100.

We think these cases decisive of the constitutional question presented. The school board does not conduct these cafeterias for profit, and in commercial competition with private restaurants and eating houses. The students are kept in during the lunch hour for reasons which intimately concern their welfare as students. In conjunction with this administrative rule, the cafeterias are necessary conveniences. Opportunity is thus afforded to the students to enjoy well-selected, well-prepared, and nourishing food, adapted to their needs. The amount charged is only for the purpose of maintaining these facilities and not for commercial profit. In many cases it is impracticable for the students to reach home and return within time for a proper enjoyment of food. The practice has for its object the physical welfare of the students, which is an important factor in their educational development. It is therefore not obnoxious to constitutional inhibitions.

■ 2. Appellees rely for their authority in establishing these cafeterias, under facts and circumstances shown in evidence, upon section 15, art. 9, of the Colorado Constitution, which provides that the directors of boards of education "shall have control of instruction in the public schools of their respective districts." Under such a grant, which is, in substance, common throughout the states of the Union, much latitude is indulged, provided the object of the power sought to be exercised is reasonably germane to the purposes of the grant. The question for decision in such cases is thus formulated by the Supreme Court of Indiana: "Is the rule or regulation, for the government of the pupils * * * a valid and reasonable exercise of the discretionary power conferred by law upon the governing authorities of such school corporation?" State ex rel. Andrew v. Webber et al., 108 Ind. 31–35, 8 N. E. 708, 711 (58 Am. Rep. 30).

"A board of education has power to adopt such rules and by-laws for the discipline and control of the school as it deems proper, and courts will not interfere unless there is a clear abuse of the power and discretion vested in the board." Wilson v. Board of Education of Chicago, 233 Ill. 464, 84 N. E. 697, 15 L. R. A. (N. S.) 1136, 13 Ann. Cas. 330.

The presumption is in favor of the proper exercise of power, and "to enjoin such exercise it must appear that the corporation is abusing its discretion." Waldschmit et al. v. City of New Braunfels et al. (Tex. Civ.

App.) 193 S. W. 1077. This statement respecting municipalities generally applies equally to this municipal subdivision.

"A rule adopted by a school board for the government of the school will not be interfered with by the courts unless it is so unreasonable as to amount to an abuse of power." Kinzer v. Directors of Independent School District of Marion, 129 Iowa, 441, 105 N. W. 686, 3 L. R. A. (N. S.) 496, 6 Ann. Cas. 996.

Education of a child means much more than communicating to it the contents of textbooks. State ex rel. Stoltenberg v. Brown, 112 Minn. 370–372, 128 N. W. 294.

"The board of education is under the duty of establishing and maintaining for the city of Dallas an efficient school system. This is the mandate of the Constitution of the state of Texas, and of the charter of the city of Dallas. In order to effectuate this high purpose, said board has the discretion to exercise any power relating to the school system of said city, not prohibited by law, which it believes will accomplish this result." City of Dallas et al. v. Mosely et al. (Tex. Civ. App.) 286 S. W. 497, 499, 500.

Coming now to the Colorado decisions, we find the following with respect to the implied powers of such boards: "Boards of county commissioners possess such powers as are expressly conferred upon them by the Constitution and statutes and such implied powers as are reasonably necessary to the efficient execution of their express powers and duties." Board of Commissioners et al. v. Davis, 27 Colo. App. 502, 150 P. 324.

And the Supreme Court of Colorado in Hallett et al. v. Post Printing & Publishing Co., 68 Colo. 573, 192 P. 658, 12 A. L. R. 919, has said that it is undoubted that the board may provide for the physical as well as the mental education of the pupils, and may, within reasonable limits as to expense, provide means and instrumentalities to that end. The fears that this may lead to unnecessary extravagance are pronounced groundless, and it is suggested that "the people of the district can always control the whole matter by changing the board."

The question in each case is whether the implied powers sought to be exercised are reasonably necessary to the express powers and duties. Appellant cites Speyer et al. v. School District No. 1, City and County of Denver et al., 82 Colo. 534, 261 P. 859, 57 A. L. R. 203, in which it was held that: "Complaint alleging that school authorities maliciously, unlawfully, and without just cause and intending to destroy businesses of plain-

tiff storekeepers conspired to promulgate and enforce rule requiring pupils to eat noon lunches in school buildings, and forbid students from dealing or trading with plaintiffs, held to state cause of action."

In this case a demurrer had been sustained in the trial court. This ruling was reversed because of the allegation of malice and absence of just cause. But the court added this significant language: "It may be conceded, so far as this demurrer is concerned, that the mere fact that a public officer hates a person and may be glad to see him suffer as a consequence of that officer's official act is not enough to justify interference by the courts, and that if the rule is a reasonable one and is made in good faith for the good of the schools and pupils it is of no consequence that it injures plaintiffs' enterprises or that defendants are glad that it does so; but when, as is here alleged, the officer acts in bad faith, with malice, and from no purpose or motive except to injure another, the case is different."

There is no allegation of malice nor design to injure others in this case. On the contrary, good faith and honesty of purpose are abundantly shown.

Upon both of her points, appellant relies largely upon the language in Detroit Citizens' St. Railway v. Detroit Railway, 171 U. S. 48–54, 18 S. Ct. 732, 734 (43 L. Ed. 67), quoting from an opinion by Mr. Justice Jackson in Grand Rapids, etc., Power Co. v. Grand Rapids, etc., Co. (C. C.) 33 F. 659, as follows: "Municipal corporations possess and can exercise only such powers as are 'granted in express words, or those necessarily or fairly implied, in or incident to the powers expressly conferred, or those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.'"

From this it is argued that the cafeterias are not indispensable to the express powers conferred upon the board, and their establishment is therefore not within its implied powers.

The real proposition involved in Detroit Citizens' Street Railway v. Detroit Railway, supra, was the authority of the Detroit common council to grant an exclusive franchise or privilege. The Supreme Court held that it had no power either inherent or derived from the Legislature so to do. This case was decided in 1898, and the opinion of Mr. Justice Jackson was written in 1888. It is doubtful if the implied powers of these administrative boards would be held to be so strictly limited in view of the advances that have been made in the methods employed in our public schools to-day. The rule announced by the Supreme Court of Colorado we think more nearly applies to the situation before us.

The Supreme Court of Michigan (Attorney General ex rel. Sheehan v. Board of Education of City of Detroit, 175 Mich. 438–441, 141 N. W. 574, 575 [45 L. R. A. (N. S.) 972]) has this to say: "Boards of education, supported by public sentiment and interest, now commit school districts to various measures and activities which our fathers would have regarded as revolutionary and intolerable. Measures which were once discarded, if they were ever considered in educational affairs, are demonstrably efficient in advancing the interests of education generally. Manual training schools and domestic science schools are examples of comparatively new approved departures in methods of public school training."

The Supreme Court of the United States (Village of Euclid et al. v. Ambler Realty Co., 272 U. S. 365–387, 47 S. Ct. 114, 118 [71 L. Ed. 303, 54 A. L. R. 1016]), quite recently has voiced the same sentiment: "Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation."

It is conceded that the practice of operating cafeterias and lunchrooms in connection with public schools has been a matter of growth within the last twenty-five years, and is now almost universal, not only in Colorado, but in the larger cities of the entire country. While it is conceivable that it may be abused and carried beyond reasonable demands, there is no evidence that this has been done in the instant case. In our opinion, appellees have acted in good faith in their effort to establish and maintain an efficient school system; that they have neither offended against the Constitution of the United States nor exceeded

the powers conferred upon them by the laws of Colorado.

It results that the decree below should be and is affirmed.