## JONES ET AL *v.* CITY OF PORTLAND.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MAINE.

No. 77. Argued November 22, 1917.—Decided December 10, 1917.

Establishing and maintaining a public yard for the sale of wood, coal and other fuel, without financial profit, to the inhabitants of a municipality, *held*, a public purpose for which taxes may be levied without violating the Fourteenth Amendment.

Revised Statutes of Maine, 1903, c. 4, § 87, sustained.

113 Maine, 123, affirmed.

THE case is stated in the opinion.

*Mr. Eben Winthrop Freeman* for plaintiffs in error:

The legislature may not make a use public by declaring it such. *Brown* v. *Gerald*, 100 Maine, 251, 373; *Lawton* v. *Steele*, 152 U. S. 133; *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, 159; *Allen* v. *Jay*, 60 Maine, 124, 136. The business of selling fuel is essentially private and taxes laid to support it are unconstitutional. *Citizens' Savings Loan Assn.* v. *Topeka*, 20 Wall. 655; *State* v. *Switzler*, 143

Missouri, 287; *Brooks* v. *Brooklyn,* 146 Iowa, 136; *Baker* v. *Grand Rapids,* 142 Michigan, 687; *Opinion of Justices,* 155 Massachusetts, 601; *Opinion of Justices,* 182 Massachusetts, 610; *Muller* v. *Thompson,* 149 Wisconsin, 488; *North Dakota* v. *Nelson County,* 1 N. Dak. 88; *Geneseo* v. *Gas Company,* 55 Kansas, 358; *Vail* v. *Attica,* 8 Kans. App. 668; *Keen* v. *Waycross,* 101 Georgia, 588; *Hayward* v. *Redcliff,* 20 Colorado, 33; *Mauldin* v. *Greenville,* 33 S. Car. 1; *Attorney General* v. *Detroit,* 150 Michigan, 310; *State* v. *Guilbert,* 56 Ohio St. 575; *Toledo* v. *Lynch,* 88 Ohio St. 71.

*Bussey* v. *Gilmore,* 3 Maine, 191, 197; *Opinion of Justices,* 58 Maine, 590; *Libby* v. *Portland,* 105 Maine, 370.

*Laughlin* v. *Portland,* 111 Maine, 486, is unsound.

The right of a municipality to establish and operate a municipal fuel plant was denied in *Opinion of Justices,* 155 Massachusetts, 598; *Prince* v. *Crocker,* 166 Massachusetts, 347, 361; *Opinion of Justices,* 182 Massachusetts, 605. See also *Opinion of Justices,* 190 Massachusetts, 611, 613; *Wheelock* v. *Lowell,* 196 Massachusetts, 220, 225; *Opinion of Justices,* 211 Massachusetts, 624.

It is permissible for the government to embark in the enterprise of furnishing the public with the necessities and conveniences of life whenever the exercise of a governmental function, as the exclusive use of a portion of the public street or the exercise of the power of eminent domain, is required to carry on the enterprise. *Opinion of Justices,* 155 Massachusetts, 598, 605; *Opinion of Justices,* 182 Massachusetts, 605, 608; *State* v. *Toledo,* 48 Ohio St. 112.

*Mr. Carroll S. Chaplin,* with whom *Mr. Guy H. Sturgis* and *Mr. Henry P. Frank* were on the brief, for defendant in error:

While custom and usage have been adopted as guides in determining whether a use is public or private (*Citizens'*

*Savings Loan Assn.* v. *Topeka,* 20 Wall. 655), recent cases have governed themselves more by the needs of the public arising from new and changed conditions. *State* v. *Toledo,* 48 Ohio St. 112; *Matter of Tuthill,* 36 App. Div. 500; *Holton* v. *Camilla,* 134 Georgia, 560; *Laughlin* v. *Portland,* 111 Maine, 486, 491, 502.

The establishment and maintenance of a municipal fuel yard is a public use. *Laughlin* v. *Portland, supra; Opinion of Justices,* 155 Massachusetts, 607; *Opinion of Justices,* 182 Massachusetts, 611; *Baker* v. *Grand Rapids,* 142 Michigan, 687. Likewise, the furnishing of ice. *Holton* v. *Camilla,* 134 Georgia, 560.

The operation of water works, and gas and electric systems for lighting and heating purposes, are public uses. *Gibbs Consolidated Gas Co.* v. *Baltimore,* 130 U. S. 393; *State* v. *Toledo, supra; Opinion of Justices,* 211 Massachusetts, 624. The means or method by which the commodity is furnished is a mere incident to the use, not determinative of its character. *Opinion of Justices,* 150 Massachusetts, 595. In *Opinion of Justices,* 182 Massachusetts, 605, and *Opinion of Justices,* 211 Massachusetts, 624, the conclusion of the court was influenced by the question whether or not the distribution of the commodity involved the use of the public streets and the exercise of eminent domain; but that question is immaterial. *Laughlin* v. *Portland,* 111 Maine, 486, 495, 496.

If the use be public, the legislative determination that a public exigency exists and that the proposed law is necessary is conclusive. *Allen* v. *Jay,* 60 Maine, 124, 138; *Opinion of Justices,* 58 Maine, 590, 619; *Laughlin* v. *Portland,* 111 Maine, 486, 499; *Talbot* v. *Hudson,* 82 Massachusetts, 417, 424; *Lowell* v. *Boston,* 111 Massachusetts, 454, 463; *Opinion of Justices,* 155 Massachusetts, 598, 607; *Livingston County* v. *Darlington,* 101 U. S. 407, 416.

It is to be presumed that the circumstances warranting the action of the legislature did in fact exist and that it

acted with full knowledge, and the judgment of the highest court of the State on the question of public use will be accepted by this court unless clearly without foundation.

MR. JUSTICE DAY delivered the opinion of the court.

By an act of the legislature of the State of Maine approved March 19, 1903, P. L. 1903, c. 122; § 87, c. 4, Revised Statutes of Maine, 1903, it was provided:

"Any city or town may establish and maintain, within its limits, a permanent wood, coal and fuel yard, for the purpose of selling, at cost, wood, coal and fuel to its inhabitants. The term 'at cost,' as used herein, shall be construed as meaning without financial profit."

The City of Portland, Maine, voted to establish and maintain within its limits a permanent coal and fuel yard for the purposes of selling at cost wood, coal and fuel to its inhabitants and that the money necessary for such purposes be raised by taxation, and that the term "at cost" as used in said vote should be construed as meaning without financial profit. On February 3, 1913, the common council of the city at a legal meeting passed the vote, and on the same date it was passed by the board of aldermen of the city, and on February 4, 1913, the mayor of the city approved it, whereupon it became the vote of the City of Portland. The city voted to appropriate the sum of one thousand dollars to be devoted to carrying out the purposes of the vote, and the appropriation was passed by the common council, the board of aldermen, and approved by the mayor of the city.

This suit was brought by citizens and taxpayers of Portland in the Supreme Judicial Court of Maine in equity to enjoin the establishment of the yard. The Supreme Judicial Court sustained a demurrer to the bill, and dismissed it. 113 Maine, 123. A writ of error brings the case here because of alleged violation of rights se-

cured to the plaintiffs in error by the Fourteenth Amendment. The contention is that the establishment of the municipal wood yard is not a public purpose, that taxation to accomplish that end amounts to the taking of the property of the plaintiffs in error without due process of law.

The decision of the case turns upon the answer to the question whether the taxation is for a public purpose. It is well settled that moneys for other than public purposes cannot be raised by taxation, and that exertion of the taxing power for merely private purposes is beyond the authority of the State. *Citizens' Saving & Loan Association* v. *Topeka*, 20 Wall. 655.

The act in question has the sanction of the legislative branch of the state government, the body primarily invested with authority to determine what laws are required in the public interest. That the purpose is a public one has been determined upon full consideration by the Supreme Judicial Court of the State upon the authority of a previous decision of that court. *Laughlin* v. *City of Portland*, 111 Maine, 486.

The attitude of this court towards state legislation purporting to be passed in the public interest, and so declared to be by the decision of the court of last resort of the State passing the act, has often been declared. While the ultimate authority to determine the validity of legislation under the Fourteenth Amendment is rested in this court, local conditions are of such varying character that what is or is not a public use in a particular State is manifestly a matter respecting which local authority, legislative and judicial, has peculiar facilities for securing accurate information. In that view the judgment of the highest court of the State upon what should be deemed a public use in a particular State is entitled to the highest respect. *Hairston* v. *Danville & Western Ry. Co.*, 208 U. S. 598, 607. In *Union Lime Co.*

v. *Chicago & Northwestern Ry. Co.*, 233 U. S. 211, this court declared that a decision of the highest court of the State declaring a use to be public in its nature would be accepted unless clearly not well founded, citing *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, 160; *Clark* v. *Nash*, 198 U. S. 361, 369; *Strickley* v. *Highland Boy Mining Co.*, 200 U. S. 527, 531; *Offield* v. *N. Y., N. H. & H. R. R. Co.*, 203 U. S. 372, 377; *Hairston* v. *Danville & Western Ry. Co.*, 208 U. S. 598, 607. This doctrine was reiterated in *O'Neill* v. *Leamer*, 239 U. S. 244, 253.

In the case of *Laughlin* v. *City of Portland*, 111 Maine, *supra*, the matter was fully considered by the Supreme Judicial Court of that State. After reviewing the cases which established the general authority of municipalities in the interest of the public health, convenience, and welfare to make provisions for supplying the inhabitants of such communities with water, light and heat by means adequate for that purpose, the court came to consider the distinction sought to be made between the cases which sustain the authority of the State to authorize municipal action for the purposes stated, and the one under consideration, because of the fact that in the instances in which municipal authority had been sustained the use of the public streets and highways for mains, poles and wires in the distribution of water, light and heat had been required under public authority, whereas in supplying fuel to consumers, under the terms of the law in question, no such permission was essential, the court said (111 Maine, 486, 496):

"Let us look at the question from a practical and concrete standpoint. Can it make any real and vital difference and convert a public into a private use if instead of burning the fuel at the power station to produce the electricity, or at the central heating plant to produce the heat and then conducting it in the one case by wires and in the other by pipes to the user's home, the coal

itself is hauled over the same highway to the same point of distribution? We fail to see it. It is only a different and simpler mode of distribution and, if the Legislature has the power to authorize municipalities to furnish heat to its inhabitants 'it can do this by any appropriate means which it may think expedient.' The vital and essential element is the character of the service rendered and not the means by which it is rendered. It seems illogical to hold that a municipality may relieve its citizens from the rigor of cold if it can reach them by pipes or wires placed under or above the highways but not if it can reach them by teams travelling along the identically same highway. It will be something of a task to convince the ordinarily intelligent citizen that an act of the Legislature authorizing the former is constitutional but one authorizing the latter is unconstitutional beyond all rational doubt. For we must remember that we are considering the existence of the power in the Legislature which is the only question before the court and not the wisdom of its exercise which is for the Legislature alone."

Answering the objection that sustaining the act in question opens the door to the exercise of municipal authority to conduct other lines of business and commercial activity to the destruction of private business, the court said (111 Maine, 500):

"But it is urged, why, if a city can establish a municipal fuel yard, can it not enter upon any kind of commercial business, and carry on a grocery store, or a meat market or a bakery. The answer has already been indicated. Such kinds of business do not measure up to either of the accepted tests. When we speak of fuel, we are dealing not with ordinary articles of merchandise for which there may be many substitutes, but with an indispensible necessity of life, and more than this, the commodities mentioned are admittedly under present economic conditions regulated by competition in the ordinary channels of private

business enterprise. The principle that municipalities can neither invade private liberty nor encroach upon the field of private enterprise should be strictly maintained as it is one of the main foundations of our prosperity and success. If the case at bar clearly violated that principle it would be our duty to pronounce the act unconstitutional, but in our opinion it does not. The element of commercial enterprise is entirely lacking. The purpose of the act is neither to embark in business for the sake of direct profits (the act provides that fuel shall be furnished at cost) nor for the sake of the indirect gains that may result to purchasers through reduction in price by governmental competition. It is simply to enable the citizens to be supplied with something which is a necessity in its absolute sense to the enjoyment of life and health, which could otherwise be obtained with great difficulty and at times perhaps not at all, and whose absence would endanger the community as a whole."

Bearing in mind that it is not the function of this court under the authority of the Fourteenth Amendment to supervise the legislation of the States in the exercise of the police power beyond protecting against exertions of such authority in the enactment and enforcement of laws of an arbitrary character, having no reasonable relation to the execution of lawful purposes, we are unable to say that the statute now under consideration violates rights of the taxpayer by taking his property for uses which are private.

The authority to furnish light and water by means of municipally owned plants has long been sanctioned as the accomplishment of a public purpose justifying taxation with a view to making provision for their establishment and operation. The right of a municipality to promote the health, comfort and convenience of its inhabitants by the establishment of a plant for the distribution of natural gas for heating purposes was sustained, and we think properly so, in *State of Ohio* v. *Toledo*, 48

Ohio St. 112. We see no reason why the State may not, if it sees fit to do so, authorize a municipality to furnish heat by such means as are necessary and such systems as are proper for its distribution. Heat is as indispensable to the health and comfort of the people as is light or water. In any event we are not prepared to say that when a State authorizes a municipality to tax with a view to providing heat at cost to the inhabitants of the city, and that purpose is declared by the highest court of the State to be a public one, the property of a citizen who is taxed to effect such purpose is taken in violation of rights secured by the Constitution of the United States. As this view decides the questions open to consideration, it follows that the judgment of the Supreme Judicial Court of Maine must be affirmed.

*Affirmed.*