PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CORNELIUS J. MOYNIHAN and EDWARD B. THOMPSON, Defendants.

County Court, Chautauqua County, June, 1923.

Constitutional law — police power — crimes — Fuel Adminstration Law constitutional — no illegal delegation of power — public emergency — motion to dismiss indictments denied.

The legislature in the proper exercise of police power, which is dependable upon the conditions existing and emergency arising, may enact laws to protect the public health, welfare and comfort, and neither the " due process " clause of the Constitution of the state of New York or of the Constitution of the United States abridges such legislative power.

While a legislative declaration of facts, material only as grounds for the enactment of a rule of law, may not be conclusive upon the court, yet such a declaration concerning public conditions, that by necessity and duty the legislature must know, is entitled to great respect.

In the exercise of lawful power and appropriate thereto statutes may be enacted in seasons of emergency which would be inappropriate at other times.

The Fuel Administration Law (Laws of 1922, chap. 673), which was passed under the reserve power of the state for the control of domestic intrastate fuel situations which congress could not and did not attempt to control, is a police measure in the interest of public health and comfort.

Said statute is not an interference with interstate commerce but a local regulation the enforcement of which has at no time been inconsistent with or impaired the enforcement of federal legislation, and the statute itself declaring " that by reason of the shortage of fuel an emergency exists directly affecting the public health and welfare requiring governmental regulation and control of the supply of fuel during such emergency and its equitable distribution to consumers at reasonable prices," it must be assumed that the emergency did exist when the statute went into effect on August 29, 1922.

The state fuel administrator, under the power conferred upon him by the statute, to supervise, control or compel the allotment and rationing of fuel to localities, dealers and consumers, and empowering him to adopt and enforce all rules and orders necessary to enable him to carry out the provisions of the statute, issued general order No. 1, effective September 18, 1922, which provided that no dealer or distributor within the state should deliver more than a two weeks' supply of the domestic sizes of anthracite, known as grate, egg, stove, chestnut and pea, to any one householder or other consumer of such sizes. This order was revoked as of October 11, 1922, by general order No. 2, effective on that date, by which dealers and distributors were directed not to deliver more coal to householders and other consumers than a thirty-day supply. Defendants having by each of five separate indictments been jointly charged with having violated the stat-

ute, moved to dismiss the indictments upon the ground that the statute in its attempted delegation to the fuel administrator of the right to promulgate rules and orders, violations of which became misdemeanors, was unconstitutional. *Held,* denying the motions, that the statute was a constitutional exercise of the police power; that the granting to the fuel administrator the power to make rules and orders necessary to carry out the provisions of the statute was not an unlawful delegation of power, nor was the statute an interference with interstate commerce.

MOTION to dismiss indictments.

*C. W. Wickersham, R. C. Coleman, Donovan & Goodyear (Cannon C. Depew,* of counsel), *Carl Sherman,* attorney-general (*Francis C. Cullen,* of counsel), *Lee L. Ottaway,* assistant district attorney of Chautauqua county, for People.

*Louis L. Thrasher (Harold J. Adams* and *John H. Leonard,* of counsel), for defendants.

OTTAWAY, J. The defendants have been jointly indicted under five separate indictments for violations of chapter 673 of the laws of the state of New York, known as the Fuel Administration Law, enacted and in effect August 29, 1922. This act, among others, contains these provisions:

" Section 1. Declaration of emergency. It is hereby declared that by reason of the shortage of fuel there exists an emergency directly affecting the public health and welfare requiring governmental regulation and control of the supply of fuel during such emergency and its equitable distribution to consumers at reasonable prices.

" § 2. Offices created; employees; offices. The office of state fuel administrator is hereby created to continue until by proclamation of the governor the emergency requiring its creation is declared no longer to exist. The state fuel administrator shall be appointed by the governor and hold office during his pleasure. * * * He may appoint and at pleasure remove such deputies and employees, including counsel, as may be needed, prescribe their powers and duties and fix their compensation. By reason of the emergency which occasions the passage of this act and the impracticability of delay in carrying out its provisions such deputies and employees shall be exempt from civil service examination and the provisions of the civil service laws and rules. * * *

" § 3. General powers. The state fuel administrator

" 1. Shall have the power to supervise, regulate and control the receipt, storage, purchase, sale, use, distribution and delivery of fuel within the state, and the production within the state of fuel.

" 2. Shall ascertain the kinds, quantity and location of fuel within the state, the needs of localities, and of consumers, public and pri-

vate, and the available sources of supply within and without the state. * * *

"5. May supervise, control or compel the allotment, apportionment and rationing of fuel to localities, dealers and consumers. * * *

"7. May prevent the waste of fuel. * * *

"10. May do all things necessary to secure to consumers an equitable distribution of available fuel at reasonable prices. * * *

"§ 4. Rules and orders. The administrator may adopt and enforce all rules and all orders necessary to enable him to carry out the provisions of this act. Every rule and order shall be posted for public inspection in the main office and each branch office of the administrator, and a certified copy filed in the office of the secretary of state and of each county clerk * * *.

"§ 13. Violations of act, rule or order. Rules made by the state fuel administrator under this act shall have the force and effect of law. A violation of any of the provisions of this act, or of any rule or order duly made by the state fuel administrator, shall be a misdemeanor and shall be punishable by a fine of not less than one hundred dollars or more than one thousand dollars or for imprisonment for not more than one year or by both; if the violation be by a corporation or association, it shall be subject to such fine, and any officer of such corporation participating in such violation shall be subject to punishment as an individual by such fine and imprisonment. * * *."

Pursuant to this act a state fuel administrator was appointed by the governor of the state of New York, and thereafter said fue administrator issued general order No. 1, in effect September 18, 1922, providing that no dealer or distributor within the state should deliver a greater quantity than a two weeks' supply of the domestic sizes of anthracite, known as grate, egg, stove, chestnut and pea, to any one householder or other consumer of such sizes.

Thereafter general order No. 2 was issued, effective October 11, 1922, whereby general order No. 1 was revoked as of October 11, 1922, and dealers and distributors were directed not to deliver more coal to householders and other consumers than a thirty-day supply.

Two of the indictments charge a violation of order No. 1 of the fuel administration, committed during September, 1922, and three of the indictments charge the defendants with violations of order No. 2, it being alleged that the defendants delivered a greater quantity of coal to the householder and consumer than they were permitted to deliver under the respective orders.

These indictments having been moved for trial the defendants appeared by their attorneys and counsel and moved to dismiss

the indictments for the following reasons: *First,* that the act itself was unconstitutional in that it was an improper use of the police power of the state; *second,* that the distribution of coal and other fuel is interstate commerce and the federal government having acted upon the subject and enacted laws removes from the state any power to enact laws upon this subject; *third,* that the statute under consideration is wholly unconstitutional in its attempted delegation to the fuel administrator of the right to promulgate rules and orders a violation of which becomes a serious crime; *fourth,* the indictments are fatally defective in the omission to allege the posting and filing of the various orders; *fifth,* that the indictments for violations of general order No. 1 should be quashed for the reason that general order No. 1 had been revoked before the indictments were found.

The act itself declares " that by reason of the shortage of fuel an emergency exists directly affecting the public health and welfare requiring governmental regulation and control of the supply of fuel during such emergency and its equitable distribution to consumers at reasonable prices." That an emergency existed does not seem to be seriously controverted by the defendants.

While it is true that a legislative declaration of facts which are material only as grounds for enacting a rule of law may not be held conclusive by the courts, yet a declaration of the legislature concerning public conditions that by necessity and duty it must know is entitled to at least great respect. That the emergency declared by the statute did exist must be assumed. *Block* v. *Hirsh,* 256 U. S. 135.

Counsel for the defendants in their original brief remark: " The question involved in this case must be determined solely upon the fact as to whether there is an improper delegation of the legislative power and whether this act is within the police power of the state. That and that alone is the sole question presented to the court here."

It is elemental that under the police power the legislature may pass laws to protect the public health, welfare and comfort. The due process clauses of the New York and federal Constitutions do not abridge this power of the legislature. *People* v. *Adirondack R. Co.,* 150 N. Y. 225; *Nechamcus* v. *Warden,* 114 id. 529; *Brown Co.* v. *Feldman,* 256 U. S. 170.

The distribution of coal under the conditions existing was of vital importance to the people of the state of New York. It is obvious that the health and welfare of the citizens of the state depended upon proper distribution of this product, and that it came within the police powers of the state. It is not to be denied that acts may be enacted in the exercise of lawful power and appro-

priate to it in seasons of emergency which would be inappropriate at other times. *Jones* v. *City of Portland,* 245 U. S. 217.

The proper exercise of this power by the state is dependable upon the conditions existing and emergency arising. The exigencies of the time necessitated a practical administration of the law which could only be effected by empowering the administration to issue rules and orders to carry out the purpose of this act in question.

The power of the legislature to enact measures in seasons of emergency and exigency consistent with the due process clauses of the state and federal Constitutions has been exhaustively reviewed by Judge Pound in the case of *People ex rel. Durham R. Corp.* v. *LaFetra,* 230 N. Y. 429. The same subject was before the court in *Guttag* v. *Shatzkin,* 230 N. Y. 646, opinion by Crane, J. Under the determination laid down in those cases and an exigency existing, the enactment of the statute under consideration was authorized and the same was within the police powers of the state of New York.

The defendants contend that in view of the recent decision of the United States District Court in *Ohio Collieries Co.* v. *Stewart,* the act is unconstitutional as an interference with interstate commerce. The Fuel Act of the state of Ohio and the Fuel Act of the state of New York differ in purpose and in provisions. Judge Killips premises his findings by the statement: " Plainly it was enacted to provide for the retention within the State of coal mined therein to be reserved through the efforts of those in direction of the act for the consumption of the people of Ohio. Every detail of the act points to that purpose and it outlines the machinery to effect such a result." This proposed enactment produced a conflict between the Ohio act and the federal Fuel Act which was pointed out by the learned judge in his opinion, and for those reasons the Ohio act was declared unconstitutional as an interference with interstate commerce. The same result was arrived at in the case of *Vandalia Coal Co.* v. *Special Coal & Food Commission,* 268 Fed. Rep. 572, where the Indiana Fuel Law was under consideration.

There seems to be no conflict between the federal act and the New York state act. The indictments disclose that the charge made was for a violation of orders regulating deliveries by dealers after the coal had arrived at their yards and was in their possession. The New York act seems to be, so far as the provisions relating to these indictments are concerned, in accord with the federal act and relates solely to intrastate commerce.

The New York state act is a police measure in the interest of the public health and comfort, passed under the reserve power

of the state for the control of domestic intrastate fuel situations which congress could not and did not attempt to control. It was a local regulation and not an interference with interstate commerce. *Public Utilities Comm.* v. *Landon,* 249 U. S. 236.

The New York and federal acts operate in different spheres, aiding and supplementing but not in conflict with each other. The enforcement of the New York act has at no time been inconsistent with or impaired the enforcement of the federal act. *Hennington* v. *Georgia,* 163 U. S. 299; *Minnesota Rate Cases,* 230 id. 358; *Penna. R. R. Co.* v. *Pub. Service Comm.,* 250 id. 566; *United States* v. *Lanza,* 43 U. S. Sup. Ct. Rep. 141.

The point most vigorously pressed by the defendants' counsel in briefs and arguments was that the statute under consideration was wholly unconstitutional in its attempted delegation to the fuel administrator of the right to promulgate rules and orders, violation of which became misdemeanors. As already determined, the legislature had the power in the emergency existing, by reason of its police powers, to enact laws in the interest of the public health and comfort for the proper distribution of fuel within the state of New York. The legislature, pursuant to this authority, passed an act declaring an emergency and creating the state fuel administrator, and granting to him certain clearly-defined and enumerated powers, among which is included the power to supervise, control, or compel the allotment and apportionment and rationing of fuel to localities, dealers and consumers, and empowering him to adopt and enforce all rules and all orders necessary to enable him to carry out the provisions of this act. The question presented by the indictments herein and the motion to dismiss is as to the power of the fuel administrator to ration fuel to consumers.

The legislature legislated to the farthest practical point to which in the nature of things it could reasonably go in expressing its will and in laying down rules of action, leaving it to the fuel administrator to apply those rules within the limits set by its enactment. The legislature was not required to remain in special session indefinitely to determine the varying conditions that might arise. This was properly left to the administrative officers created by the act. In the emergency existing the legislature has enacted and from the necessities of the case it was compelled to leave to executive officials the enforcement of rules and orders to bring about the desired results. The administrative power to make and enforce rules was of necessity granted to the fuel administrator. This power of the legislature to enact and the authority of the administrative official or board to make rules and orders and to provide for their enforcement within the legislative enactment has

frequently been before the courts. The legislature of the state of New York did not make an unlawful delegation of power in granting to the fuel administrator the power to make rules and orders necessary to carry out the provisions of the act. *United States* v. *Grimaud,* 220 U. S. 506; *People* v. *Klinck Packing Co.,* 214 N. Y. 121, 126; *United States* v. *Eaton,* 144 U. S. 677; *Pierce* v. *Doolittle,* 130 Iowa, 333; *Village of Saratoga Spgs.* v. *Saratoga G., etc., Co.,* 191 N. Y. 123; *People ex rel. Lieberman* v. *Vandecarr,* 175 id. 440; 199 U. S. 552; *Butterfield* v. *Stranahan,* 192 id. 470; *Metropolitan Board of Health* v. *Heister,* 37 N. Y. 651.

The indictments presented contain a plain and concise statement of the acts charged to constitute the crime, as provided by section 275 of the Code of Criminal Procedure.

The contention of the defendants that the indictments should be quashed for the reason that general order No. 1 had been revoked before the indictments were found must be denied as being subject to the provisions of section 93 of the General Construction Law of the state of New York, which provides that "the repeal of a statute or part thereof shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected."

An order may be entered denying the motions to dismiss the indictments here.

Ordered accordingly.