## MUTUAL OIL CO. v. ZEHRUNG et al.

(District Court, D. Nebraska, Lincoln Division. April 7, 1925.)

No. 217.

1. **Courts** &#8660;329—Allegation of sum in controversy in suit to enjoin municipality from selling gasoline and oil is sufficient to determine jurisdiction.

Ordinarily, in suit to enjoin municipal corporation from engaging in business of selling gasoline and oil, allegation of sum in controversy is sufficient to determine jurisdiction.

2. **Courts** &#8660;328(3) — Test for jurisdictional purposes in suit for injunction against city selling gasoline is value of plaintiff's right to conduct its business free from such interference.

The test for jurisdictional purposes in suit to enjoin city from engaging in business of selling gasoline is value of plaintiff's right to conduct its business free from alleged unlawful interference.

3. **Constitutional law** &#8660;128—Grant of right to install storage tank or to conduct business is not grant of right to be free from competition, within contract clause of constitution.

Grant by city of right to install gasoline storage tank or to conduct business is not grant of right to be free from competition, within contract clause of Constitution, especially where grant is temporary, and revocable at discretion of city council.

4. **Franchises** &#8660;4—Franchise to conduct business is not grant of right to be free from competition, in absence of contract for exclusive privilege.

In absence of exclusive privilege to private persons, grant by municipal corporation of formal franchise to conduct business within municipality does not grant right to be free

from competition, even from conduct of similar business subsequently entered into by municipality.

**5. Constitutional law** ⟜278(1)—**Establishment of municipal plant for sale of oil and gas in competition with private persons is not deprivation of property without due process, even though private business is rendered unprofitable or property becomes less valuable (Const. Amend. 14).**

Establishment of municipal plant for sale of oil and gas in competition with private persons does not deprive them of property without due process of law, in violation of Const. Amend. 14 even though property becomes less valuable or business is rendered unprofitable by reason of such competition.

**6. Constitutional law** ⟜278(1)—**Municipal corporations** ⟜266—**Amendment to charter, and ordinance thereunder, authorizing sale of oil and gasoline by city, held not in violation of federal and state Constitutions (Const. Neb. art. 1, § 3, and article 11, §§ 2–4; Const. Amend. 14).**

Amendment to charter of city of Lincoln, operating under Const. Neb. art. 11, §§ 2–4, and ordinance adopted thereunder, empowering city to engage in business of selling gasoline and oil, *held* not in violation of Fourteenth Amendment and Const. Neb. art. 1, § 3 relative to due process of law.

**7. Municipal corporations** ⟜267—**Municipal plant for sale of gasoline and oil is proper function of local "government" (Const. Neb. art. 11, § 2).**

Operation of plant by municipal corporation for sale of gasoline and oil is proper function of local government, within powers granted by Const. Neb. art. 11, § 2; word "government" not being limited to administration of laws or regulations of conduct, but including all activities in which city may lawfully engage.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Government.]

**8. Municipal corporations** ⟜868(1)—**Appropriation for municipal plant for sale of gasoline and oil, not made in pursuance of estimate and without receipt of bids, as provided by charter, held unlawful (Comp. St. Neb. 1922, §§ 3904, 3958, 3959, 4143, 4144, 4371–4374).**

Under Comp. St. Neb. 1922, §§ 3904, 3958, 3959, 4143, 4144, 4371–4374, appropriation for municipal plant for sale of gasoline and oil without having made appropriation in pursuance of prepared and published estimate, and without receipt of bids, as provided by charter, *held* unlawful.

In Equity. Suit by the Mutual Oil Company against Frank C. Zehrung and others. On motion to dismiss the bill. Motion to dismiss overruled.

Burkett, Wilson, Brown & Wilson, of Lincoln, Neb., for plaintiff.

C. Petrus Peterson and Charles R. Wilke, both of Lincoln, Neb., for defendants.

MUNGER, District Judge. This suit has been submitted upon a motion to dismiss the plaintiff's bill. The plaintiff, a corporation organized under the laws of Maine, brought suit against the city of Lincoln, Neb., and against the controlling officers of the city, who are charged with the administration of its ordinances. The prayer of the bill is for the issuance of an injunction permanently restraining the defendants from engaging in the business of selling gasoline and oil to the inhabitants of Lincoln. It appears from the allegations in the bill that the city is organized under the laws of Nebraska as a city of the first class having a population of over 40,000 and of less than 100,000, and is operating under the provisions of sections 2, 3, and 4 of article 11 of the state Constitution of Nebraska. By these sections the city is entitled to frame its own charter—that is, to define its own powers and mode of operations—provided such charter does not violate any provision of the state Constitution or any general law of the state. It also appears that an amendment to the city charter, which has become a portion thereof, reads as follows:

"The city council shall have power to engage in the business of selling gasoline and oil to the inhabitants of the city, both at retail and wholesale, and for that purpose shall have power to acquire and own such real and personal property as may be necessary and incident thereto. The city shall not charge for gasoline and oil, sold by it, more than the cost thereof to the city, plus the cost of handling the same, including contingencies."

An ordinance was adopted by the city, creating a department to sell gasoline and oil to the inhabitants of the city, and a fund with which to pay for operations, and directing the purchase and sale of gasoline and oil to the city's inhabitants "at the cost thereof to the city plus the cost of handling the same, including contingencies," and the city has engaged in the business of selling oil and gasoline according to the terms of the ordinance. The plaintiff is engaged in the business of selling gasoline and oil in the city of Lincoln, and for that purpose has acquired, by ownership or lease, a number of oil stations, and owns equipment and property designed for use in conducting this business, and has an established business. The bill negatives the existence of any necessity or emergency requiring the city to engage in this line of business, and alleges that there are very many companies and individuals selling gasoline and oil in the city of Lincoln,

in free competition with each other, and at reasonable prices. It is alleged that the city is conducting this business with money derived from taxation of the property of its inhabitants, and that the city is free from taxation on the plant and property used in the business.

The plaintiff complains that it erected its stations for the sale of gasoline and oil under restrictions imposed by the city ordinances and in pursuance of a resolution adopted by the city council, granting its request to install an underground storage tank at a designated place. The resolution recites that the permit is to be temporary and revocable at the direction of the city council, but the plaintiff asserts that it is a grant of a vested right and franchise to the plaintiff to continue its business so long as it complies with the laws. In some detail the plaintiff alleges that the city will be able to sell and is selling gasoline and oil at a price which results in such competition with plaintiff's business and prices that it will be forced to discontinue business or to conduct it at a loss, and that because of this competition the value of its property invested in the conduct of its business has been lessened. Complaint is also made that the plaintiff contributes, by taxation of its property, to the operation of the city's plant in competition with its own, and that the city is engaged in an enterprise which is not for a public purpose—is not for its own government, as provided by section 2 of article 11 of the Constitution of Nebraska. In addition to these claims of violation of the Constitution of the United States and of the state of Nebraska, the bill alleges that the city council is conducting this business of the sale of oil and gas in violation of provisions of the city charter.

It is alleged that the fund which the city is using and has appropriated for the management of this business is being expended and used without an appropriation having been made in pursuance of a prepared and published estimate, without the receipt of bids for the supplies furnished, and that the money used has been transferred from money appropriated for the use of other departments of the city government, and it is alleged that these acts are contrary to provisions in the city's charter, and cause an illegal expenditure of the public moneys, and impose a burden of illegal taxation on the plaintiff's property.

[1, 2] The questions which are presented by the motion to dismiss are (1) the jurisdiction of this court; (2) whether the provisions of the amendment to the city charter and of the city ordinance are in violation of the Constitution of the United States; (3) or are in violation of the Constitution of Nebraska; (4) whether the acts of the city council are in violation of the provisions of the city's charter. It is suggested that this court has no jurisdiction of the suit, because the amount in controversy does not exceed the sum of $3,000, exclusive of interest and costs. The bill alleged that more than this sum is in controversy, and in a suit of this nature, that allegation ordinarily is sufficient. For jurisdictional purposes the test is the value of the plaintiff's right to conduct its business free from the alleged unlawful interference (Bitterman v. Louisville & Nashville R. R., 28 S. Ct. 91, 207 U. S. 205, 225, 52 L. Ed. 171, 12 Ann. Cas. 693; Hunt v. N. Y. Cotton Exchange, 27 S. Ct. 529, 205 U. S. 322, 336, 51 L. Ed. 821; Glenwood Light Co. v. Mutual Light Co., 36 S. Ct. 30, 239 U. S. 121, 126, 60 L. Ed. 174; Packard v. Banton, 44 S. Ct. 257, 264 U. S. 140, 142, 68 L. Ed. 596; City of Hutchinson v. Beckham, 118 F. 399, 402, 55 C. C. A. 333; Board of Trade v. Cella Commission Co., 145 F. 28, 29, 76 C. C. A. 28), and, in case of the alleged illegal taxation of plaintiff, the amount it will be required to pay as a consequence, but there is nothing in the bill which negatives the general allegation that the sum involved exceeds the jurisdictional amount.

[3, 4] In support of the motion to dismiss, it is claimed that the bill discloses no violation of the Constitution of the United States. The plaintiff claims that the bill shows both a violation of the contract clause and of the Fourteenth Amendment. The claim that the plaintiff holds an implied contract to be free from competition in the conduct of its business cannot be sustained. It engaged in business under the usual conditions which surround private commercial enterprises. Restrictions by ordinance usually attend all such lines of business conducted in cities, and the grant of a mere right to install a storage tank or to conduct its business at a designated place cannot be said to be a grant of a right to be free from competition, especially as the grant provides that it is temporary and revocable at the discretion of the city council. A grant by a municipal corporation of a formal franchise to a person or corporation to conduct its business within the municipality does not grant a right to be free from competition, even from the conduct of a similar business subsequently entered into by the municipality, in the absence

of a contract for such an exclusive privilege, although such competition impairs the value of the grantee's property. Hamilton Gaslight Co. v. Hamilton City, 13 S. Ct. 90, 146 U. S. 258, 268, 36 L. Ed. 963; City of Joplin v. Southwest Missouri Light Co., 24 S. Ct. 43, 191 U. S. 150. 157, 48 L. Ed. 127; Water Co. v. Knoxville, 26 S. Ct. 224, 200 U. S. 22, 36, 50 L. Ed. 353; Madera Waterworks v. Madera, 33 S. Ct. 571, 228 U. S. 454, 456, 57 L. Ed. 915.

[5] Some claim is also made that the establishment of this municipal plant for the sale of oil and gas in competition with the plaintiff deprives the plaintiff of its property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, but, while the effect of this competition may impair the value of the plaintiff's property, it may not complain of such a hazard, which existed when it engaged in its business in the city, and it is not in the legal sense a deprivation of its property without due process of law, even if its property becomes less valuable, or its business is rendered unprofitable by reason of such competition. Helena Water Works Co. v. Helena, 25 S. Ct. 40, 195 U. S. 383, 388, 392, 49 L. Ed. 245.

A further claim is made that the operation of this rival line of business by the city deprives the plaintiff of its property by using public money, which is raised by means of taxation of the plaintiff and others, for a private purpose. What is a public purpose, for which moneys raised by taxation may be used, has been the subject of consideration by many courts. Decisions by state courts of last resort have differed somewhat as to the scope of business in which municipal corporations may engage. Some have condemned the operation of enterprises, such as moving picture exhibitions, the manufacture and sale of ice, the sales of coal and wood, and the sale of goods in ordinary mercantile establishments. State v. Lynch, 102 N. E. 670, 88 Ohio St. 71, 48 L. R. A. (N. S.) 720, Ann. Cas. 1914D, 949; Opinion of the Justices, 30 N. E. 1142, 155 Mass. 598, 601; In re Municipal Fuel Plants, 66 N. E. 25, 182 Mass. 605, 60 L. R. A. 592; State v. Orear, 210 S. W. 392, 277 Mo. 303; Union Ice & Coal Co. v. Town of Ruston, 66 So. 262, 135 La. 898, L. R. A. 1915B, 859, Ann. Cas. 1916C, 1274. Others of such courts have declared it a proper public purpose for such municipal corporations to engage in the sale of coal and wood, and to manufacture and sell ice, to the inhabitants of the municipal-

ity. Laughlin v. City of Portland, 90 A. 318, 111 Me. 486, 491, 502, 51 L. R. A. (N. S.) 1143, Ann. Cas. 1916C, 734; Jones v. City of Portland, 93 A. 41, 113 Me. 123; Baker v. City of Grand Rapids, 106 N. W. 208, 142 Mich. 687; Central Lumber Co. v. City of Waseca, 188 N. W. 275, 152 Minn. 201; Holton v. City of Camilla, 68 S. E. 472, 134 Ga. 560, 31 L. R. A. (N. S.) 116, 20 Ann. Cas. 199.

The Supreme Court of Nebraska, upon a consideration of this division of decisions, has held that a tax for the support of a municipal fuel yard is for a public purpose, and that such a tax is not contrary to any limitations of the taxing power. Consumers' Coal Co. v. City of Lincoln, 189 N. W. 643, 109 Neb. 51, 54. The validity of the Maine statute, authorizing the operation of a municipal yard for the sale of wood, coal, and other fuel without financial profit, was sustained by the Supreme Court of the United States against the claim that such a use of the public money was not for a public purpose, and was a violation of the Fourteenth Amendment. Jones v. City of Portland, 38 S. Ct. 112, 245 U. S. 217, 224, 225, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660.

Some of the cases, which have upheld the right of a municipal corporation to operate a fuel yard, have expressed an opposition to the theory that the municipal corporations might also carry on any kind of commercial business, such as the operation of a grocery store, meat market, or bakery, and have sustained the operation of a fuel yard, because the nature of the business of selling fuel is akin to the long-used powers of furnishing electricity or heat from a central municipal plant, and because of judicial notice taken that coal was under the control of monopolistic combinations, and was sold at unreasonable prices.

There are some analogies between the sale of gasoline and the sale of electricity by a municipality. Electric power may be used to propel one class of automobiles, and gasoline to propel another. Electricity is somewhat used for heating purposes, and gasoline is also used as a method of producing heat. Some municipal corporations operate a street railway system by means of electricity, affording a means of transportation which could be indirectly served by the sale of gasoline to owners of automobiles. But in the development of the present uses of gasoline it may be conceded that the principal uses of the gasoline and oil which the

city of Lincoln would sell would be for the operation of automobiles and of stationary internal combustion engines. Is the conduct of this business by the city a violation of the plaintiff's rights under the Fourteenth Amendment to the Constitution of the United States?

A similar contention was made by taxpayers of North Dakota, urging the invalidity of acts of the Legislature of that state, which undertook to establish a state bank, to establish a system of warehouses, elevators, flour mills, factories, plants, and machinery in order to manufacture and sell wheat, flour, and other farm products; and to establish a home building association, looking to the aiding of citizens of the state in obtaining homes for themselves. The Supreme Court of the United States in Green v. Frazier, 40 S. Ct. 499, 253 U. S. 233, 64 L. Ed. 878, held these statutes to be no violation of the Fourteenth Amendment. It reviewed the decision of the Supreme Court of North Dakota (176 N. W. 11, 44 N. D. 395), holding the Mill and Elevator Act valid, finding that agriculture produced 90 per cent. of the wealth of that state, that the other business pursuits in that state largely depended upon the welfare of agriculture, that the former system of transporting and marketing the wheat grown in the state prevented the attainment of just prices and caused much loss to the wheat growers in the state, and finding the Home Building Act valid because of the promotion of the general welfare in providing homes for the people, a large proportion of whom were tenants, moving from place to place. The Supreme Court of the United States (40 S. Ct. 499, 253 U. S. 233, 64 L. Ed. 878) referred to the former decision in Jones v. City of Portland, 38 S. Ct. 112, 245 U. S. 217, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660, sustaining the Maine statute authorizing cities and towns to maintain fuel yards for the purpose of selling coal and wood, and said:

"In that case we reiterated the attitude of this court towards state legislation, and repeated what had been said before, that what was or was not a public use was a question concerning which local authority, legislative and judicial, had especial means of securing information to enable them to form a judgment, and particularly that the judgment of the highest court of the state declaring a given use to be public in its nature, would be accepted by this court, unless clearly unfounded. In that case the previous decisions of this court, sustaining this proposition, were cited with approval, and a quotation

was made from the opinion of the Supreme Judicial Court of Maine, justifying the legislation under the conditions prevailing in that state. We think the principle of that decision is applicable here. This is not a case of undertaking to aid private institutions by public taxation as was the fact in Citizens' Savings & Loan Association v. Topeka, 20 Wall. 655, 665 [22 L. Ed. 455]. In many instances states and municipalities have in late years seen fit to enter upon projects to promote the public welfare which in the past have been considered entirely within the domain of private enterprise. Under the peculiar conditions existing in North Dakota, which are emphasized in the opinion of its highest court, if the state sees fit to enter upon such enterprises as are here involved, with the sanction of its constitution, its Legislature, and its people, we are not prepared to say that it is within the authority of this court, in enforcing the observance of the Fourteenth Amendment, to set aside such action by judicial decision."

It will be observed that in this decision there is no condemnation of these statutes because they seek to have the state engage in strictly commercial enterprises, such as the operation of flour mills and elevators. The importance to its citizens of the proper conduct of this branch of industry in the state is emphasized, as the importance of the distribution of heat to the city's inhabitants was emphasized in Jones v. City of Portland, 38 S. Ct. 112, 245 U. S. 217, 225, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660; but the importance of agriculture is hardly more important than transportation. The use of gasoline and oil in our modern life as a means of transportation for automobiles and tractors is so common and general that the general welfare of a municipality or a state may well be said to depend upon it. While the validity of this particular power given to the city of Lincoln has not been passed upon by the Supreme Court of Nebraska, it has been approved by the legislative authority of the city of Lincoln, which has been empowered by the state Constitution to make enactments that have the force of an act of the Legislature. In reviewing its former decision in the North Dakota case (176 N. W. 11, 44 N. D. 395), the Supreme Court of the United States, in Wolff Co. v. Industrial Court, 43 S. Ct. 630, 633, 262 U. S. 522, 537 (67 L. Ed. 1103, 27 A. L. R. 1280), referring to the meaning of "public use," said: "The use for which the tax is laid may be any purpose in which the state may engage, and this covers almost any

private business, if the Legislature thinks the state's engagement in it will help the general public, and is willing to pay the cost of the plant and incur the expense of operation."

[6] No sufficient distinction is observed between the purposes and the effects of the acts of the state of North Dakota, which were sustained by the Supreme Court of the United States, and of the amendment to the charter of the city of Lincoln and the ordinance adopted thereunder, to warrant a declaration that the latter are in violation of the Fourteenth Amendment to the Constitution of the United States, and for the same reason this court is unable to declare them in violation of section 3 of article 1 of the Constitution of Nebraska.

[7] A claim is made that the operation of a plant for the sale of gasoline and oil is not an act "for its own government," within the powers granted by section 2 of article 11 of the state's Constitution, allowing cities to form their own charters. The word "government," as used in this connection, is not limited to mere administration of the laws or regulations of conduct, but includes all the activities in which the city may lawfully engage. As it has been held that this is a proper public purpose for which money raised by taxation may be used, it must be held to be one of the proper functions of local government.

[8] Another question is presented by the motion to dismiss, although it has not been referred to in the briefs or argument. The bill alleges that the city council is conducting this business, and is about to continue it, in violation of provisions of the city's charter. It is alleged that the charter provides that the council shall have no power to appropriate or use any money, except in pursuance of an appropriation made for the class or object for which the money is payable; that this appropriation must be made by an ordinance at a time fixed by the charter; that an annual estimate of the supplies to be furnished during the fiscal year, and inviting bids therefor, must be published before the appropriation ordinance is passed; and that the city council may not add anything to the expenses of the city above the amounts provided in the annual appropriation ordinance, except in certain instances. It is then alleged that the city council did not prepare and publish an estimate of the money to be used in the operation of this gasoline and oil business, that no bids were received for the supplies furnished, and that no appro-

priation of money for the purpose of operating this business has been made. The bill negatives the existence of the exceptional circumstances which it alleges the charter provides. The motion to dismiss admits all these allegations which are well pleaded.

Statutory limitations of this nature over the council's power to expend the money of the municipality, regulating the conduct of municipal corporations, have long been found in the statutes of Nebraska. See sections 3904, 3958, 3959, 4143, 4144, 4371, 4372, 4373, 4374. The effect of these restrictions is to make invalid any action of the city governing board in making appropriations not provided by the proper estimate, nor included in the annual appropriation ordinance, if the expenditure is not otherwise authorized (City of Blair v. Lantry, 31 N. W. 790, 21 Neb. 247; McElhinney v. City of Superior, 49 N. W. 705, 32 Neb. 744; Dunkin v. Blust, 119 N. W. 8, 83 Neb. 80), and authorizes an injunction, in a proper case, against the continuance of the diversion of the municipal funds.

The motion to dismiss will be overruled.