**CITY OF DENTON et al. v. DENTON HOME ICE CO.** (No. 1252—5368.)

Commission of Appeals of Texas, Section A. June 28, 1929.

T. B. Davis, City Atty., of Denton, and Cofer & Cofer, of Austin, for appellants.

Brent C. Jackson and George M. Hopkins, both of Denton, for appellee.

Royston & Rayzor, of Houston, amicus curiæ.

### Certified Question.

CRITZ, J. The certificate very clearly and fully states the facts and issues here presented. It is as follows:

"Upon the verified petition of appellee, Denton Home Ice Company, the Honorable B. W. Boyd, Judge of a district court of Denton County, in vacation, on the 5th day of January, 1929, granted a temporary writ of injunction against the City of Denton, its mayor and councilmen, restraining them from building, maintaining or operating an ice plant in the City of Denton. The defendants filed their original answer presenting a plea in abatement, a general demurrer, special exceptions, a general denial and a special verified answer. Upon this answer defendants filed and presented their motion to dissolve the temporary writ of injunction. The judge first heard the plea in abatement, the general demurrer and exceptions, and overruled them. Upon a further hearing upon the pleadings and evidence submitted, the motion to dissolve was overruled and the injunction continued, and from the order overruling the motion to dissolve, this appeal has been duly prosecuted.

"In our further statement, we omit all reference to pleadings, evidence, and rulings of the court which relate to questions other than that certified, to wit: Whether it is lawful for the City of Denton to build, equip, own and operate a municipal ice plant?

"As pertinent to this question, the record discloses that the City of Denton is a city of over 5,000 inhabitants, operating under a charter and under the Home Rule Amendment and statutes applying to such cities. The appellants, other than the city, are the mayor, city secretary, and five commissioners of the City of Denton. The appellee is a private corporation engaged in the business of manufacturing and selling ice in the City of Denton, also is a large property taxpayer of said city and a large user of electric power and water furnished by the city. The city, acting by and through its mayor and other officials named, is threatening to build, establish, maintain, and operate a large plant for the manufacture and sale of ice and for the storage of the same in the City of Denton, and in furtherance of this plan is now threatening and have advertised for bids, to be opened at a designated date, for the construction of a large brick building intended to house ice and to be used as a site for said ice manufacturing and vending business.

"It was further alleged and shown that there was already three ice plants in said city producing and supplying sufficient ice to meet every necessity of the inhabitants. It is contended in behalf of appellants that the manufacture, sale, and distribution of ice is a business affected with a public interest in a like category with gas as fuel and electric current and the supply of water, and that municipally owned ice plants are justified and authorized by law. In support of this contention, appellants cite article 1175, Rev. Statutes of 1925, which enumerates powers of cities operating under the Home Rule Amendment, and article 1302, §§ 15 and 88, which define the purposes for which private corporations may be created. Appellants further cite McQuillan on Municipal Corporations, vol. 5, § 1158, page 77, and the following cases as upholding the right of municipalities to own and operate ice plants, to wit: Oklahoma Light & Power Co. v. Corporation Commission, 96 Okl. 19, 220 P. 54; Holton v. Camilla, 134 Ga. 560, 68 S. E. 472, 31 L. R. A. (N. S.) 116, 20 Ann. Cas. 199; Saunders v. Mayor and Council of Arlington, 147 Ga. 581, 94 S. E. 1022, Ann. Cas. 1918D, 907; City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A. L. R. 828; Laughlin v. Portland, 111 Me. 486, 90 A. 318, 51 L. R. A. (N. S.) 1143, Ann. Cas. 1916C, 734; Jones v. Portland, 113 Me. 123, 93 A. 41, affirmed by the Supreme Court of the United States in Jones v. Portland, 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660; Central Lumber Co. v. Waseca, 152 Minn. 201, 188 N. W. 275; Mutual Oil Co. v. Zehrung (D. C.) 11 F.(2d) 887; Consumers' Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643.

"A further contention of appellants is to the effect that if the statutes and decisions cited above do not establish the right of a municipality to own and operate an ice plant, it is nevertheless within the legislative power to determine that such business is so affected with a public interest as to make the same a public utility and that hence the City of Denton, as a Home Rule City, had the legislative power to declare the ice business contemplated by it affected with public interest so as to make the same a public utility, citing in support of this contention the charter provisions of the City of Denton, to the effect that the enumeration of powers in the charter shall not be construed to preclude the City of Denton, by implication or otherwise, from exercising all the powers incident to the enjoyment of local self-government, nor to do any and all things not inhibited by the Constitution and laws of the State of Texas; that all powers heretofore granted or that

may hereafter be granted by general or special laws are. hereby preserved to the City of Denton; that exclusive franchises or privileges are prohibited; that the city shall forever have the right 'to purchase, own, control, and operate any and all public utilities'; and to purchase and regulate all franchises granted by said city, further citing the cases of Mutual Oil Co. v. Zehrung (D. C.) 11 F.(2d) 890; Jones v. Portland, 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660; Laughlin v. Portland, 111 Me. 486, 90 A. 318, 51 L. R. A. (N. S.) 1143, Ann. Cas. 1916C, 734.

"In opposition to the contentions of appellants as above indicated, appellee insists upon the general proposition that municipal corporations are creatures of the statutes and can exercise only those powers expressly designated to it, or necessarily implied as an incident to those powers expressly granted, and that no statute or constitutional provision of Texas has classified the ice business as a public utility, or as so affected with a public use as to authorize a municipality to do the things threatened in the present suit, citing in aid of this contention Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104; Gulf Bitulithic Co. v. Nueces County (Tex. Civ. App.) 297 S. W. 752; State v. Country Club (Tex. Civ. App.) 173 S. W. 570; State ex rel. Kansas City v. Orear, 277 Mo. 303, 210 S. W. 392; Union Ice Co. v. Ruston, 135 La. 898, 66 So. 262, L. R. A. 1915B, 859, Ann. Cas. 1916C, 1274; Williams v. Standard Oil Co., by the Supreme Court, reported in 278 U. S. 235, 49 S. Ct. 115, 73 L. Ed. ——. Appellee also cites section 3, art. 8 of the Constitution, which provides that taxes shall be levied and collected by general laws and for 'public purposes only'; and also calls attention to article 1108, Rev. Statutes of 1925, which enumerates public utilities and which fails to include the manufacture and sale of ice in the list; and article 1119 which provides for the regulating of public utilities and which does not include the ice business, and other similar statutes inferentially negativing the proposition that the ice business is a public utility, including reference to the powers given municipalities to exercise the right of eminent domain; and the case of Van Valkenburgh v. Ford (Tex. Civ. App.) 207 S. W. 405, in which it was held that the ice business was not one of the public utilities authorized to exercise the right of eminent domain. It may not be amiss to add that the opinions printed in pamphlet form with supporting authorities of Judge H. M. Garwood of Houston and Honorable Chas. L. Black of the Austin bar, which, together with the printed pamphlet containing the charter provisions of the City of Denton, submitted herewith, are referred to by the several contestants in this case. These opinions, as we are given to understand, were submitted to our Legislature in aid of an effort to clothe our railway commission with power to regulate the ice business. Appellants cite the opinions in aid of their contention, while appellee refers to the fact, asserted, that the legislature failed to confer the power sought on the railway commission, thus indicating the legislative opinion that the ice business was not of such public use as to constitute it a public utility.

"Because of the wide interest in the question, the conflicting state of the decisions and because the construction of our statutes are involved, we deem it advisable, pretermitting all reference to other questions presented, to submit to your Honors for determination the vital question in this case, to wit:

"Whether the City of Denton, under the foregoing statements, in lawful ways, may provide the means and therewith build, establish and operate an ice plant and supply the inhabitants of Denton with ice at a reasonable rate?"

### Opinion.

An answer to the question certified involves a proper construction and interpretation of the following statutes of this state, and charter provisions of the city of Denton:

### Statutes.

Article 1175, Rev. St. 1925, of Texas, provides:

"*Enumerated Powers.*—Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty:

\* \* \* \* \* \* • \*

"13. To buy, own, construct within or without the city limits and to maintain and operate a system or systems, of gas, or electric lighting plant, telephone, street railways, sewerage plants, fertilizing plants, abattoir, municipal railway terminals, docks, wharfs, ferries, ferry landings, loading and unloading devices and shipping facilities, or any other public service or public utility, and to demand and receive compensation for service furnished for private purpose or otherwise, and to exercise the right of eminent domain as hereinafter provided for the appropriation of lands, rights of way or anything whatsoever that may be proper and necessary to efficiently carry out said objects. Any city shall have the power to condemn the property of any person, firm or corporation now conducting any such business and for the purpose of operating and maintaining any such public utilities and for the purpose of distributing such service throughout the city or any portion thereof; provided that any city may adopt by its charter any such rules and regulations as it may deem advisable for the acquiring and operation of any such public utilities.

"14. To manufacture its own electricity, gas, or anything else that may be needed or used by the public; to purchase and make contracts with any person or corporation for the purchasing of gas, electricity, oil or any other commodity or article used by the public and to sell the same to the public upon such terms as may be provided by the charter."

Article 1176, Rev. St. 1925 of Texas 1925, reads as follows:

"The enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided that such powers shall not be inhibited by the State Constitution."

### Charter Provisions.

"Article II.

"Section 1. The enumeration of powers made in this Charter shall never be construed to preclude the City of Denton, by implication or otherwise, from exercising all the powers incident to the enjoyment of local self-government nor to do any and all things not inhibited by the Constitution and laws of the State of Texas; and all powers heretofore granted or that may hereafter be granted by general or special laws are hereby preserved to the City of Denton."

"Article V.

"Section 3. Should the City of Denton determine to acquire any public utility by purchase, condemnation or otherwise, said City shall have the power by ordinance to obtain funds for the purpose of acquiring said public utility and paying the purchase price therefor by issuing bonds and shall have the power to secure said bonds by fixing a lien upon the property so acquired and said lien shall apply only to the property so pledged."

"Article VII.

"Section 2. No exclusive franchise or privilege shall ever be granted by the City of Denton."

"Section 3. The City of Denton shall forever have the right to purchase, own, control and operate any and all public utilities and hereby forever forbids the sale of same except on approval by popular vote."

If the manufacture, sale, and distribution of ice is a public service, and ice is a public utility, then, under the statutes of this state above quoted, and the charter provisions of the city of Denton, also above quoted, the question here certified should be answered in the affirmative. Of course, if ice is a public utility, then its manufacture, sale, and distribution is a public service. This conclusion reduces the question to be decided to a single issue; that is, whether ice is a public utility.

■ We have read with great interest the very able and exhaustive briefs and arguments filed by counsel for both parties to this suit, and have reached the conclusion that the best authorities support the contention of the city of Denton to the effect that ice is a public utility, so far as the right to manufacture and sell same is concerned. See authorities cited in certificate. Therefore the right of the city to manufacture and sell it is established.

■■ We are further of the opinion that, in addition to the right conferred on a home rule city by statute to manufacture and sell ice, the city of Denton also has the power, under its charter, to determine that such business is so affected with a public interest as to make the same a public utility. In other words, we hold that the city of Denton, under its charter provisions above quoted, has the power to define and constitute ice as a public utility. Since the city has the power to manufacture and sell ice under the laws of this state, and its charter provisions, it is not for us to decide the wisdom of exercising the power.

We recommend that the question certified be answered in the affirmative.

CURETON, C. J. The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.